[Civ. No. 29224. Second Dist., Div. Four. Nov. 23, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ARTHUR MURRAY, INC., et al., Defendants and Appellants.

334

Gibson, Dunn & Crutcher, John J. Hanson, John H. Sharer, Wyman, Finell & Rothman, Frank Rothman and Erwin H. Diller for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Vincent W. Thorpe, Assistant Attorney General, Burton J. Gindler, Samuel L. Williams and Walter E. White, Deputy Attorneys General, and Vern B. Thomas, District Attorney, for Plaintiff and Respondent.

KINGSLEY, J.—This appeal seeks the reversal of a preliminary injunction issued on January 25, 1965, which enjoins defendant Arthur Murray, Inc., a corporation, and said defendant's agents, servants, employees, representatives and all persons acting in concert or participating with said defendant from violating certain provisions of Title 2.5 of the Civil Code (Civ. Code, § 1812.80 et seq.) hereinafter referred to as the Dance Act.

The complaint, filed on August 8, 1962, by the Attorney General and the District Attorney of Santa Barbara County, in the name of The People of the State of California, sought to enjoin defendant Arthur Murray, Inc., and others, together with the agents, servants and employees of each of the named defendants,[1] from violating the Unruh Retail Installment Sales Act (Civ. Code, § 1801 et seq.) and the Dance Act. So far as appears from the record before us, no appearance has been made in the trial court by any defendant other than Arthur Murray, Inc. On August 27, 1962, by a decree reciting notice to five of the other named defendants and the ''presence'' of two of those five, the trial court issued a preliminary injunction, restraining certain of the defendants[2]—not including Arthur Murray, Inc.—from selling lifetime contracts and from doing other acts prohibited by the Dance Act. The preliminary injunction, against these defendants, was couched in terms identical with the later injunction against Arthur Murray, Inc., which is the subject of the present appeal, and which is hereafter quoted in full. So far as appears, no appeal from the preliminary injunction of August 27, 1962, has ever been taken.

---

[1] In addition to Arthur Murray, Inc., the complaint named as defendants: Arthur Murray Dancing Studios of California., Inc., a corporation; Arthur Murray School of Dancing of Santa Barbara, an association; Ned Cole; Herbert Caswell; Manuel Joseph Ramos; Christal Schullhorn, Mary E. Brooks; A. Gowdy; together with several John Does.

[2] The preliminary injunction of August 27, 1962, ran against defendants Ramos, Schullman, Gowdy, Brooks and the Arthur Murray School of Dancing of Santa Barbara, an association, together with ''their agents, servants, employees and representatives, and all persons acting in concert or participating with them.''

Arthur Murray, Inc., is a Delaware corporation with its principal place of business in New York, but which plaintiff alleges is doing business in California. It filed a motion to quash the service of summons on it, contending that it was not doing business in this state. After a substantial period, during which depositions were taken and other discovery procedures pursued, the motion to quash service was denied on May 1, 1964. Arthur Murray, Inc., demurred and moved to strike the complaint and, failing in these efforts, filed its answer to the complaint on September 11, 1964. On October 19, 1964, plaintiff moved for a preliminary injunction against Arthur Murray, Inc., and, after filing of sundry affidavits and memoranda of law, a hearing in open court on November 23, 1964, followed by further filings of memoranda, the trial court issued, on January 25, 1965, the preliminary injunction against Arthur Murray, Inc., which is the subject of the present appeal.[3]

That injunction, after reciting the appearances for the plaintiff and for Arthur Murray, Inc., provides:

"It Is Hereby Ordered that, during the pendency of this action or until the court shall otherwise order, defendant Arthur Murray, Inc., a corporation, and said defendant's agents, servants, employees, representatives, and all persons acting in concert or participating with said defendant, shall be and hereby are enjoined and restrained from engaging in or performing directly or indirectly any and all of the following acts:

"1) Collecting or attempting to collect, receiving or accepting, directly or indirectly, any money from any person in the State of California, pursuant to any contract for the sale of the services of or the use of the facilities of a dance studio, which contract was entered into in the State of California after September 15, 1961, and does not conform to the provisions of Civil Code sections 1812.84, 1812.85, 1812.86, and 1812.89(a).

"2) Entering or offering to enter into any contract with any person in the State of California for the sale of the services of or the use of the facilities of a dance studio, which contract calls for payment of an amount in excess of $500.

---

[3]The formal record on appeal discloses only part of the history of the litigation, outlined in the text. We have gleaned the remainder of the story from statements made in the briefs on appeal which are either corroborated by the other party or not disputed.

"3) Entering or offering to enter into any contract with any person in the State of California which relates to the sale of the services of or the use of the facilities of a dance studio for a period of time which extends or purports to extend for more than seven years or for a period measured by the lifetime of the purchaser of the contract.

"4) Entering or offering to enter into any contract with any person in the State of California which relates to the sale of the services of or the use of the facilities of a dance studio, which contract fails to contain a clause providing that if, by reason of death or disability, the person agreeing to receive services is unable to receive all services for which he has contracted, he and his estate shall be relieved from the obligations of making payments for any services other than those received prior to death or the onset of disability, and that if he has prepaid any sum for services, so much of such sum as is allocable to services he has not taken shall be promptly refunded to him or his representatives.

"5) Conspiring or participating in the doing of any of the acts described in sections 1 through 4 above."

Copies of this injunction were served on sundry dance studios and dance studio operators throughout the State of California, not named as parties to the present law suit. On February 25, 1965, these persons filed a notice of appeal from "the preliminary injunction" of January 25, 1965; on February 26, 1965, Arthur Murray, Inc., filed its separate notice of appeal from "the granting of" that injunction.

Arthur Murray, Inc., unsuccessfully sought a stay of execution of the injunction from the trial court and, thereafter, all of the appellants herein sought supersedeas in this court—a request which we denied, without opinion, on March 1, 1965.

I

■ The purported appeal by persons other than Arthur Murray, Inc., must be dismissed. They were not parties to the action and, not having taken any steps in the trial court whereby they became, or even attempted to become, such parties, they have no right of appeal. (3 Witkin, Cal. Procedure (1954) Appeal, § 34, and authorities there cited.)

In support of the right of these nonparties to appeal from the order granting the injunction, counsel cite certain lan-

guage in *Estate of Sloan* (1963) 222 Cal.App.2d 283, 291-292 [35 Cal.Rptr. 167]. But we are not persuaded that that case authorizes us to disregard, in the case at bench, the general rule and the authorities above referred to. The *Sloan* case involved an order made in a probate proceeding, construing a testamentary trust in a manner which was adverse to the interests of the appellant remaindermen. However, a probate proceeding is in rem, and persons having, or claiming to have, an interest in the estate are permitted to appear and be heard without the formal joinder which is required in personal actions. *Sloan*, therefore, simply follows the rule that, *in probate,* an interested person may appeal even though he did not participate in the hearing below.

█ The present action was brought against certain named parties. The order herein appealed from is directed against one of those named parties—Arthur Murray, Inc. It also enjoins that named defendant's "agents, servants, employees, representatives, and all persons acting in concert or participating with said defendant," for the reason that anyone acting for or aiding the named defendant in a violation of the injunction would, himself, be guilty of a contempt. But the injunction affects these agents, servants, employees, representatives, and all persons acting in concert or participating with said defendant, only insofar as they are acting for, or are aiding, the named defendant. The injunction is not directed against them insofar as they may act independently of the named defendant. They are not parties to the present action and they are not, under the law, "aggrieved" by the order.

## II

Since the preliminary injunction before us on the appeal by Arthur Murray, Inc., enjoins only acts which are claimed to violate the Dance Act, we are not herein concerned with the portions of the complaint which rely on the Unruh Retail Installment Sales Act. And, since the Dance Act contains a severability clause (Civ. Code, § 1812.95), we neither discuss nor consider regulatory sections of that statute not covered by the injunction as issued.

Insofar as herein involved, the statute relied on is as follows: § 1812.84. No contract for health or dance studio services shall require payments or financing by the buyer over a period in excess of two years from the date the contract is entered into, nor shall the term of any such contract

be measured by the life of the buyer; provided, however, that the services to be rendered to the buyer under the contract may extend over a period not to exceed seven years from the date the contract is entered into.''

§ 1812.85. ''Every contract for health or dance studio services shall provide that performance of the agreed upon services will begin within six months from the date the contract is entered into.''

§ 1812.86. ''No contract for health or dance studio services shall require payment by the person receiving the services or the use of the facilities of a total amount in excess of five hundred dollars ($500).''

§ 1812.89. '' (a) Every contract for health or dance studio services shall contain a clause providing that if, by reason of death or disability, the person agreeing to receive services is unable to receive all services for which he has contracted, he and his estate shall be relieved from the obligation of making payment for services other than those received prior to death or the onset of disability, and that if he has prepaid any sum for services, so much of such sum as is allocable to services he has not taken shall be promptly refunded to him or his representative.''

### III

Appellant contends that the record does not show that it ever has, or that it intends to, violate the statutory provisions above quoted. Apparently what appellant means by this is that it does not contract directly with the dance students, either in violation of the law or otherwise. Nevertheless, the record shows that appellant's method of doing business is calculated to aid and abet the violations which are committed by the dance studios, even assuming it to be true (as appellant contends) that the local licensees are not agents of appellant. The record supports the inference that appellant will continue to aid and encourage such violations unless it is enjoined from so acting. Not only does the record before the trial court show numerous instances of such violations by the studio operators, but the affidavits filed, by this appellant, in the trial court in support of its motion for a stay of execution, and filed by it here in support of its application for supersedeas, repeat and enlarge on appellant's own claim that, except for the injunction, it and its licensees will continue these violations. In fact, those applications to stay the injunction, pursued with great vigor, were without point

except in the light of the declared intent to violate the statutory provisions herein involved if the inhibiting bar of the injunction could be removed. Having taken that position in connection with the applications for stay and supersedeas, appellant may not now, in honesty, contend to the contrary.

Appellant contends, however, that the only violations proved are those of local dance studios and their operators and that these actions are not those of agents or employees of the appellant. ■ However, there is ample authority to support the validity of a suit to enjoin persons who are aiding and abetting the commission of unlawful acts. If the facts presented in the affidavits of the prevailing party indicate that a conspiracy can be inferred from the nature of the acts done, the relations of the parties, the interests of alleged conspirators and other circumstances, a preliminary injunction may issue. (*Globe Dairy Lunch Co.* v. *Joint Executive Board of Culinary Workers* (1953) 117 Cal.App.2d 190, 193-194 [255 P.2d 94]; and see, also, *Securities & Exchange Com.* v. *Timetrust, Inc.* (1939) 28 F.Supp. 34.)

■ In the instant case the evidence presented to the trial court showed that Arthur Murray, Inc., set up studios in California, gave them financial assistance, provided national advertising and publicity, supplied dance instruction procedures, and generally retained tight control on the studio's operations. Arthur Murray, Inc., received from its studios in California gross receipts amounting to three quarters of a million dollars in 1960. It also knew that a portion of those receipts was obtained through unlawful contracts since it received weekly detailed reports on the extent of its operators' violations.

Arthur Murray, Inc., has retained the right to terminate its agreement with any studio operator violating California law. There is no evidence it ever advised its operators to obey the law. On the contrary, Arthur Murray, Inc., required its operators to transmit a percentage of the sums received from the unlawful contracts for safekeeping.

Appellant contends that the corporation is not responsible for the acts of its licensees because they are not its agents. We need not here decide whether or not a technical agency relationship exists. The controls above mentioned, retained by Arthur Murray, Inc., in its license agreements and exercised by it, together with the facts that the corporation fixed hourly rates, established a system of student refunds, set up

a system of behavior, set up an agreement whereby unused portions of courses at one studio must be honored at another, inspected books and directed the type of bookkeeping to be employed, approved any independent authorizing of the operators, along with engaging in other aspects of control, support the implied finding of the trial court that Arthur Murray, Inc., aided and encouraged the widespread and acknowledged violations committed in the dance studios licensed by it, and authorized the trial court in its action enjoining Arthur Murray, Inc., from continuing its own participation in the statutory violations.

Arthur Murray, Inc., insists that the various controls contained in its franchise agreements with California dance studios are merely those customary in any national franchising operation, that they are inserted solely in order to protect the trade name of Arthur Murray and in particular to protect the reputation of that name as standing for a reputable and well run business. The point here is not the validity of the franchise agreements as such, nor whether or not they serve some legitimate business purpose. The significant fact, so far as the case at Bench is concerned, is the fact that the existence of these controls, coupled with Arthur Murray, Inc.'s admitted knowledge of the violations of California law committed by its licensees, and the fact that the continued violation of the California statute was an essential part of the licensees' method of doing business (as defendant has conceded by its argument in this court), all taken together, support the trial court's finding that Arthur Murray, Inc., has aided, encouraged and participated in the admitted statutory violations by its licensees, whether those licensees are technically "agents" or not.

Appellant objects that, whereas the only specific violations alleged in the complaint involved licensees in Santa Barbara County, the affidavits filed in support of the application for the injunction herein involved cite alleged violations by licensees in other parts of the state. The same objection was made in the court below and, in our opinion, properly disregarded. The complaint, read as a whole, makes it clear that the violations therein mentioned are merely illustrative of a pattern of violation, alleged to be practiced throughout the State of California and, as such, were merely evidentiary matters set forth in support of the ultimate allegation that this appellant was, and intended to continue, to violate the statute by and through the activities of its sundry licensees.

Under these circumstances, the plaintiff was not limited in its proof of such violations, wherever, and through whomsoever they have occurred.

## IV

■ Appellant argues at great length that the Dance Act is unconstitutional; we find the argument unpersuasive.

■ The enactment of the Dance Act in 1961 followed a long investigation of the business of operating dance and health studios. The record of that investigation[4] was before the trial court and is before us (and, in any event is a matter of which the trial court and we could take judicial notice (Code Civ. Proc., § 1875, subd. 3)). We need not extend this opinion by quotations from that official record. It more than justifies the formal legislative finding, contained in section 1812.80 of the Civil Code, which reads as follows:

"(a) The Legislature finds that there exists in connection with a substantial number of contracts for health and dance studio services, sales practices and business and financing methods which have worked a fraud, deceit, imposition, and financial hardship upon the people of this State; that existing legal remedies are inadequate to correct these abuses; that the health and dance studio industry has a significant impact upon the economy and well-being of this State and its local communities; that the abuses and problems which have arisen in the field of health and dance studio services are similar and substantial as to both industries and peculiar to both industries as to kind or extent; and that the provisions of this title relating to such contracts are necessary for the public welfare.

"(b) The Legislature declares that the purpose of this title is to safeguard the public against fraud, deceit, imposition and financial hardship, and to foster and encourage competition, fair dealing, and prosperity in the field of health and dance studio services by prohibiting or restricting false or misleading advertising, onerous contract terms, harmful financial practices, and other unfair, dishonest, deceptive, destructive, unscrupulous, fraudulent and discriminatory practices by which the public has been injured in connection with contracts for health and dance studio services."

[4]Final Report of the Assembly Interim Committee on Judiciary—Civil, pertaining to Prepaid Service Contracts of Health and Dance Studios. Assembly Interim Committee Reports, 1959-1960, Vol. 23, No. 1. (Hereinafter cited as "Assem. Final Report".)

In addition, the statements of appellant and of its licensees, made to the trial court and to us in the attempts to stay the operation of the injunction, disclose practices justifying strict regulation. It was the burden of those applications that appellant's licensees had outstanding many contracts for dance lessons which called for substantial performance by them for a long time into the future, and that, unless they were permitted to sell new contracts, to new customers, they would not have the funds with which to service the contracts already in force. In other words, appellant and its licensees themselves painted for the courts a picture of an operation in which, as a matter of general practice, the funds paid by one customer are partially devoted to meeting the costs of a contract with a prior customer, leaving the latest customer at the risk that no new victim can be found to, in turn, finance the satisfaction of the then existing contracts!

The legislative investigation shows other varieties of sharp practice, some of which we note at a later point in this opinion.

Unless a legislative classification is purely arbitrary, the court may not substitute its discretion for that of the Legislature. (*State of California* v. *Industrial Acc. Com.* (1957) 48 Cal.2d 365, 371-372 [310 P.2d 7].) Here there was adequate basis for invoking special regulations of a class of business so habitually fraught with fraud and with sharp practices.

Appellant next contends that, assuming that some regulation of dance studios was constitutionally proper, the regulations imposed herein were greater than necessary. It objects especially to the prohibition of ''lifetime'' contracts and of contracts otherwise restricted as to time by section 1812.84, and to the limitation of contracts to those involving not over $500.

The contention is without merit. The Legislature was called on to balance the risks of fraud and of dissipation of advance payments, above discussed[5] against the practical

---

[5]Prior to the enactment of the law, the Assembly Interim Committee on Judiciary noted that:

''The opportunity to make a quick dollar at the expense of the lonely, credulous or impressionable customer has led to practices which form a pattern of overreaching and misrepresentation seriously close to fraud and extortion.'' (Assem. Final Report, p. 7.)

The committee stated further:

''It is the committee's conclusion that the long-term contracts now being offered by some health and dance studios do far more harm than

business need of an operator to sufficient advance payment and commitment to enable it to make, in turn, firm contracts for staff and facilities. We cannot say that the limitations herein involved were not a rational reconciliation of the two interests.

■ Appellant argues that the Dance Act is unconstitutional in that it attempts to regulate matters preempted by federal regulation, specifically 38 Stat. 719 (1914), as amended, 15 U.S.C. § 45, as amended, which provides in part: "(a)(1) Unfair methods of competition in commerce, and unfair or deceptive practices in commerce are declared unlawful."

However, we see no conflict between the Dance Act and 15 U.S.C. § 45. In this regard, the court in *People* ex rel. *Mosk* v. *National Research Co. of California* (1962) 201 Cal.App. 2d 765, 776-777 [20 Cal.Rptr. 516], stated: "We have not been furnished with nor have we noted any precedent authority which impels the conclusion that the field of unfair, fraudulent or deceptive business practices has been preempted by federal enactment to the exclusion of state control and regulation. The similarity of the statutes of the two jurisdictions in relation to unfair business practices indicates, on the contrary, a common purpose and must be considered as supplementing each other, rather than being in conflict."

Not only is there no conflict between the state and federal regulations, but there is nothing to suggest that Congress intended that its legislation in this field be exclusive. The operation of dance studios is primarily a local affair, as contrasted with fields such as labor relations, transportation, and international relations, with which the preemption cases have been concerned. There is no reason to think—and appellant cites us to no authority for the proposition—that Congress has yet decided to take over the field of fraudulent and unfair business practices to the exclusion of traditional state regulation under the police power.

■ Finally, appellant contends that the $500 limitation contained in Civil Code section 1812.86 is "... nothing more than a price fixing regulation." It is true that, read

good. They offer an irresistible temptation to the fraudulent operator to use high-pressure salesmanship, sign up all the customers he can for the largest amounts and longest terms that can be extracted, then close the studio or curtail services enough to discourage his newly acquired clientele." (Assem. Final Report p. 20.)

literally, the section would prohibit an operator from contracting for a single lesson, to be given immediately, if the price for that lesson exceeded $500. But the constitutionality of a statute is not determined by its theoretical effect on some imaginary event. Even in an era of high prices, the sale of single dance lessons at a rate of $500 per lesson is not within the scope of reasonable possibility. It is clear that the purpose of this section, and its only potential application, is as a part of the overall scheme of limiting the number of lessons which a studio may contract to give in any one contract. As we have above held, that regulatory scheme is, on the record before the Legislature and before us, constitutionally valid.

V

Appellant next contends that it was an abuse of discretion to issue a preliminary injunction in this case; we do not agree.

In part, this argument is based on the contention, above discussed and rejected, that the evidence does not show a pattern of violations by appellant sufficient to justify interim relief against it. However, the granting of a preliminary injunction is largely discretionary, the order will not be reversed unless there was a manifest abuse of discretion by the trial court, and all conflicts must be resolved and all inferences drawn in favor of the respondent. (*Metro-Goldwyn-Mayer, Inc.* v. *Lee* (1963) 212 Cal.App.2d 23, 28 [27 Cal.Rptr. 833].)

The evidence that Arthur Murray studios throughout the state violated the Dance Act was overwhelming, The operators of Arthur Murray's Santa Barbara studio entered into dozens of contracts in excess of the $500 limit set in the Dance Act. Some of these were in amounts ranging up to $11,884. In less than six months in 1962 the Santa Barbara operators made nearly three dozen cash collections in excess of $500, collecting nearly $15,000 from a Mrs. Cunningham. Verified complaints filed in civil actions brought against eight Arthur Murray studios alleged at least 49 contracts in violation of the Dance Act.

In the face of such overwhelming evidence, it cannot be stated that the trial judge abused his discretion in issuing the preliminary injunction.

Appellant contends, also, that the delay of over two years in seeking, and of an additional six months in granting, the preliminary injunction itself shows an abuse of discretion. In

the first place, it is clear that the delay in moving for an injunction against appellant was due chiefly to the time necessary to resolve its contention that it was not properly before the court and its attacks on the pleadings. Within five weeks after the case was at issue against appellant, the motion for the injunction was made; any delay thereafter is attributable to an understandable and appropriate concern by the trial court over a matter which, as appellant so vigorously contends, involved its economic stability.

 In addition, whatever may be the rule in cases involving only the private interests of two private litigants, we do not agree that mere delay in the enforcement of a public right against a public evil can bar appropriate action whenever the public officer involved determines to act. As we said in answer to a similar contention in *People* v. *2,624 Thirty-Pound Cans of Frozen Eggs* (1964) 224 Cal.App.2d 134, 138 [36 Cal.Rptr. 427]: "The public interest involved cannot be defeated by the inaction of the [public] employees."

## VI

Appellant argues that the Attorney General is without power to institute the present action, contending that the sole remedy for any violation is the action for treble damages given to a victim by section 1812.94 of the Civil Code and the protection against collection implied by the fact that a violative contract is made void by section 1812.92.

In support of this position, appellant argues: (1) that the Legislature, in enacting the Dance Act in its final form, omitted a provision, found in a draft act on the subject prepared by students at Stanford University; (2) that the Legislature has expressly given such a power in connection with certain other statutes in the general field of regulation of unfair business practices, thus indicating a purpose to withhold the power where not expressly conferred; (3) that one of the Governor's secretaries had stated, in a letter written by him, that ". . . no state agency is charged with the enforcement . . ." of the Dance Act; and (4) that a superior court judge, in another action, had indicated that he doubted the existence of such a power.

As to the third point, the secretary's letter was not addressed to the question of the power of the Attorney General to resort to judicial enforcement, but rather to the question of the existence in any executive or administrative

agency of powers to police the conduct of dance studios. The comments of the superior court judge were made in connection with the power of the Attorney General to secure judicial help in the conduct of an investigation; they were not directed to the power to maintain a civil action. In any event, the attitudes of the secretary and the judge, although entitled to respect, are hardly authorities binding on this court.

The first point is without merit. ▮▮▮ Whatever weight a court may attach to changes made by the Legislature or its committees in considering a bill formally introduced, we think that any inferences to be drawn from the omission of matters contained in private proposals are too speculative to form the basis of judicial deductions on legislative intent.

The second contention, based on the express inclusion of a power of suit by the Attorney General in other statutes is, in essence, the same as that urged against the right of the Attorney General to sue to enforce the Unruh Civil Rights Act (Civ. Code, § 51), in *Don Wilson Builders* v. *Superior Court* (1963) 220 Cal.App.2d 77 [33 Cal.Rptr. 621], and there rejected.[6] We need not repeat here the analysis of the law of this state contained in the cited opinion. ▮▮▮ Here, as there, there is involved a statute, enacted after careful legislative consideration, designed to protect not only a group in society especially unable to protect themselves, but also to protect the public generally against the effects of practices which, as the legislative investigation disclosed not infrequently resulted in loss and damage to the public economy as well as the economy of the victims. We regard the power of the Attorney General to sue in this case as being beyond question.

## VII

Finally, it is argued that the injunction is improper because, although the statute declares that contracts in violation of its terms are void (Civ. Code, § 1812.91), and while it grants to a victim of any violation an action for treble damages (Civ. Code, § 1812.94), it does not prohibit a voluntary contract, voluntarily carried out. If we understand this argument (which seems to us to ignore the provisions of section 1812.82 of the Civil Code),[7] it is that appellant and its

---

[6] In this case hearing in the Supreme Court was denied.

[7] Civil Code, section 1812.82: "Every contract for health or dance studio services shall be in writing and shall be subject to the provisions of this title."

licensees should be free to enter into contracts in violation of the statute if they are willing to run the risk that a student may rescind and demand the statutory treble damages.

But this is merely another way of stating the argument that the statute regulates what are mere private relationships between the contracting parties in an area which does not concern the public. For the reasons set out above, we think that the statute was enacted for a public purpose and that the accomplishment of that end justifies injunctive relief in the name of, and on behalf of, the People. The individuals who sign these contracts are usually credulous and inexperienced, and ignorant of their rights. Prevention by injunction is a more effective remedy than retroactive relief in damages. And prevention is the essence of the public benefit which the statute before us seeks.

The purported appeals by persons other than Arthur Murray, Inc., contained in the document denominated "Notice of Appeal," executed by Frank Rothman on behalf of the firm of Wyman, Finell & Rothman, and dated February 25, 1965, are dismissed. On the appeal by defendant Arthur Murray, Inc., the order granting the preliminary injunction issued on January 25, 1965, is affirmed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied December 13, 1965, and the petition of appellant Arthur Murray, Inc., for a hearing by the Supreme Court was denied January 19, 1966. Mosk, J., did not participate therein.