[Civ. No. 28935. Second Dist., Div. Four. Oct. 28, 1966.]

ALICE M. BECK, Plaintiff and Respondent, v. ARTHUR MURRAY, INC., Defendant and Appellant.

Gibson, Dunn & Crutcher, John J. Hanson and John H. Sharer for Defendant and Appellant.

W. D. Allison for Plaintiff and Respondent.

KINGSLEY, J.—The sole issue on this appeal is whether or not the trial court properly held defendant Arthur Murray, Inc. liable in damages, as provided by section 1812.94 of the Civil Code, for a violation by its licensee of the provisions of the Dance Act (Civ. Code, §§ 1812.80-1812.95).

Stating the facts most favorably to respondent, as we are required to do on this appeal, the following seem to be clear: Defendant Arthur Murray, Inc. (hereinafter Murray) is a Delaware corporation, having its principal place of business in New York. It licenses sundry dance studios throughout the United States, under contracts whereby the licensee is authorized to use the name "Arthur Murray Studios" in connection with his business, is required to utilize certain methods of dance instruction developed by Murray and to conform to certain requirements dealing with the decor of the dance studios, to render reports and accountings to Murray and to pay Murray a percentage of the gross receipts from the studio operation. The licensee obligates himself to conform to Murray's instructions as to the general method of operation, so as not to bring discredit on the trade name of Murray. The contract expressly provides that the licensee pay his own

expenses, bear all losses and retain all profits (except, of course, the percentage of gross payable to Murray). The contract requires the licensee to display "conspicuously" in his studio a sign, which, in this case, read as follows: "Ned Cole Bosnick is authorized to operate an Arthur Murray Dance Studio in Santa Barbara, California pursuant to license agreement with Arthur Murray, Inc. and the licensee is solely responsible for all courses enrolled at this studio and all obligations of any kind respecting the business of this studio. Arthur Murray, Inc., New York, N. Y."

Defendant Ned Cole Bosnick owned and operated "The Arthur Murray Dance Studio," in Santa Barbara pursuant to such a license. His employees contacted plaintiff, and she enrolled for a course of lessons, paying therefor by a draft on her savings account in the amount of $3,994. Bosnick disappeared shortly thereafter and another operator continued to service plaintiff's contract. The record does not show how many lessons plaintiff in fact received, nor does it contain any evidence bearing on the reasonable value of such lessons as she did receive.

Plaintiff's complaint named, as defendants, Mr. Bosnick, Bosnick's successor licensee, Murray, and various other defendants. Ultimately, all defendants except Murray were dismissed and the action proceeded against Murray. The trial court found that the contract between plaintiff and Bosnick violated several sections of the Dance Act, that Bosnick was not an actual agent of Murray but that he was an ostensible agent, and awarded plaintiff the recovery of the $3,994 paid, plus $3,000 additional damages and $1,000 attorney's fees.[1] Murray has appealed.

Murray does not here deny that the contract which plaintiff executed violated the Dance Act, nor that plaintiff had a cause of action against Bosnick for some amount. It contends: (1) that the evidence does not support the finding of ostensible agency; (2) that the evidence does not support the finding as to the amount of damages; and (3) that, in any event, the punitive damages may be recovered only for a wilful violation of the act.

---

[1]Civil Code section 1812.94 provides that "Any buyer injured by a violation of this title may bring an action for the recovery of damages. Judgment may be entered for three times the amount at which the actual damages are assessed plus reasonable attorney fees." Plaintiff had prayed for $11,982 (three times $3,994), plus attorney fees. Understandably, Murray raises no objection to the fact that the judgment was for less than that prayed for.

## I

Findings of fact by a trial court must be sustained on appeal if there was substantial evidence before the trial court which, with inferences legitimately drawn therefrom, support the ultimate findings made. ▇ We think that, as to the issue of ostensible agency, the findings herein attacked must be sustained. Plaintiff testified that she had received numerous phone calls, introduced by the statement "Arthur Murray Dance Studio calling"; she received mailings purportedly from the "Arthur Murray Dance Studio"; the contract which she executed showed the other party to be the "Arthur Murray School of Dancing," with the written signature of a "registrar." When she visited the dance studio, she saw signs, posters and cards with the name "Arthur Murray" prominently displayed. When asked as to her reasons for enrolling in the dance lessons, plaintiff testified: "Well, being an Arthur Murray Dance Studio and seeing them on television and hearing about them, everybody was talking about it, I finally was convinced that maybe it was the thing to do to go down to Arthur Murray's Dance Studio and see what they had to offer." She testified that no one told her that the studio was owned or operated by Bosnick, her attention was not called to the disclaimer sign above mentioned, nor did she see it.

Murray's objection to the finding lies in the fact that plaintiff was never asked, and never testified, in so many words, whether she believed Bosnick and his employees to be agents of Murray, or that she relied on such a belief in enrolling for dance lessons. ▇ But we know of no rule which requires a plaintiff to testify to these facts in any particular way. Testimony from which belief and reliance may properly be deduced seems to us as significant as would have been a presently self-serving averment of the legally ultimate facts. The trial court was entitled to draw an inference of reasonable belief and of reasonable reliance from the record before him; whether or not to draw it was his function, not ours.

▇ Nor are we impressed by Murray's contention that the other element of ostensible agency—that plaintiff's belief and reliance were not only reasonable but were caused by affirmative acts or by negligence on the part of Murray[2]—was lack-

[2]Civil Code section 2300: "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him."

ing. As the Legislature set forth in enacting the Dance Act,[3] and as this court pointed out in *People* v. *Arthur Murray, Inc.* (1965) 238 Cal.App.2d 333 [47 Cal.Rptr. 700], the purpose of the statute herein involved was to protect gullible and unsophisticated persons from the very practices utilized by Bosnick here. That Murray, with the controls which it retained over its licensees, was unaware of their practices is incredible; certainly the provisions in the license for reporting and transmitting payments had charged it with knowledge that sections 1812.84 and 1812.86 had been violated. Operating in this field, chargeable with knowledge of the practices of its licensees, Murray either intended that the Dance Act be violated by them, or was blindly indifferent. Under those circumstances, Murray, if it hoped to avoid legal responsibility for its licensees' violations, was required to do more than to require the vague and ambiguous sign above quoted, which was the sole method it had adopted to avoid the obvious implications of agency which persons such as plaintiff should have been expected to draw from the use of the Arthur Murray name.

The cases cited and relied on by Murray are not helpful. In *South Sacramento Drayage Co.* v. *Campbell Soup Co.* (1963) 220 Cal.App.2d 851 [34 Cal.Rptr. 137], there had been a prior course of conduct between the alleged agent and the third party such that it should have been clear that the agent had no authority to enter into the kind of long range contract he purported to enter into; in preceding long range contracts, the agreement was always consummated by the agent's supervisor.

---

[3]Civil Code, section 1812.80: "(a) The Legislature finds that there exists in connection with a substantial number of contracts for health and dance studio services, sales practices and business and financing methods, which have worked a fraud, deceit, imposition, and financial hardship upon the people of this State; that existing legal remedies are inadequate to correct these abuses; that the health and dance studio industry has a significant impact upon the economy and well-being of this State and its local communities; that the abuses and problems which have arisen in the field of health and dance studio services are similar and substantial as to both industries and peculiar to both industries as to kind or extent; and that the provisions of this title relating to such contracts are necessary for the public welfare.

"(b) The Legislature declares that the purpose of this title is to safeguard the public against fraud, deceit, imposition and financial hardship, and to foster and encourage competition, fair dealing, and prosperity in the field of health and dance studio services by prohibiting or restricting false or misleading advertising, onerous contract terms, harmful financial practices, and other unfair, dishonest, deceptive, destructive, unscrupulous, fraudulent and discriminatory practices by which the public has been injured in connection with contracts for health and dance studio services."

In the case at bench there were no equivalent facts suggesting that the plaintiff was put on notice about Bosnick's lack of authority.

Defendant alleges that plaintiff had a duty to investigate the existence and scope of authority. (*Ernst* v. *Searle* (1933) 218 Cal. 233, 240 [22 P.2d 715].) However, once all the necessary elements of ostensible agency have been established, there would be no additional duty to investigate. It is true that a finding of ''reasonable'' reliance may or may not require an original investigation by the plaintiff, depending on the facts of the case; but it is conceivable that a reasonable belief can be engendered in the mind of a third party by certain factors, such that there would be no necessity for further inquiry. If the reliance is found to be reasonable, there is no further duty to investigate.

Defendant correctly maintains that there are important economic advantages to society in the franchise system of doing business. However, our decision in no way endangers that system of enterprise; defendant could have easily protected itself by requiring that its licensee inform the public of his licensee status in more effective ways than the one inconspicuous sign that was in fact required.

Defendant properly argues that the mere licensing of trade names does not create agency relationships either ostensible or actual. Defendant's cases cited in support of this proposition[4] hold that no agency existed, often on the grounds that in *those particular* businesses, it was ''common knowledge'' that those businesses were run by independent dealers. (*Westerdale* v. *Kaiser-Frazer Corp.* (1951) 6 N.J. 571 [80 A.2d 91]; *Reynolds* v. *Skelly Oil Co.* (1939) 227 Iowa 163 [287 N.W. 823]; *Coe* v. *Esau* (Okla. 1963) 377 P.2d 815, 818; *Sherman* v. *Texas Co.* (1960) 340 Mass. 606 [165 N.E.2d 916].) However, just because it is ''common knowledge'' that certain businesses are independently owned, this is not a matter of ''common knowledge'' for all businesses. On the contrary, it is equally ''common knowledge'' that certain nationwide businesses are not independently owned but are owned by a single organization which operates by chains or branches. Plaintiff could have well believed that defendant owned and operated the Santa Barbara studio.

Defendant argues that the case of *Shaw* v. *Jeppson* (Utah 1952) 121 Utah 155 [239 P.2d 745], held that no agency was

---

[4]Most of these cases, but not all, deal with actual, rather than ostensible, agency.

formed between defendant and its licensees in Salt Lake City. That case dealt with the elements of actual agency and is not relevant to the problem before this court.

Since we conclude that the trial court properly found that Bosnick was an ostensible agent of Murray, we need not consider the alternative theories advanced in respondent's brief to sustain liability.

## II

However, we conclude that the trial court was in error in the amount of damages allowed.

First, we think that, on the record here, Murray was not liable for any penalty. It is the usual rule that statutory penalties do not follow merely as part of *respondeat superior*. (2 Witkin, Summary of Cal. Law (7th ed. 1960) Torts, § 398, p. 1603.) In *People* v. *Arthur Murray, Inc.* (1965) *supra*, 238 Cal.App.2d 333, we held that an injunction could issue against this same defendant, enjoining it from violation of the Dance Act. But that injunction had issued on a record of a widespread course of conduct, and on admissions by Murray, which are not presented to us here. On this record, we cannot say that Murray, although sufficiently chargeable with knowledge of its licensee's violations to be subject to a suit for refund, was so personally involved as to be subject to the statutory penalty. On remand, the parties may, if they so desire, explore this issue in greater depth.

Secondly, we agree that the record does not support a judgment for actual damages in the amount of $3,994. As Murray points out, the section permitting an action for violation of the Dance Act grants it for ''actual damages.'' But actual damages are not, necessarily, the equivalent of the amount paid, nor even of the amount paid over the $500 limit prescribed by section 1812.86. Subdivision (b) of section 1812.94 allows the seller a 30-day period within which to correct a contract originally violative of the statute. This, and the provisions of section 1812.89 (which deal with refunds where the buyer is incapacitated from receiving lessons), lead us to believe that the ''actual'' damages (and the basis on which treble damages if allowed should be computed) represents, as in any contract case, the difference between the amount paid and the value of that received. Since this record is devoid of evidence as to the reasonable value of the instruction which plaintiff did receive, that issue must be retried.

In its petition for rehearing, Murray argues that respondent should not be allowed a retrial on the damage issue because

the failure of proof on that point was called to the attention of counsel in the trial court, citing *Mayer* v. *Beondo* (1948) 83 Cal.App.2d 665 [189 P.2d 327, 190 P.2d 23]. However, in that case, the omission was of a fact the legal significance of which should have been apparent. In the instance case, counsel dealt with an interpretation of a statute which, until this case itself, had not been construed. We do not think plaintiff should be penalized for not appreciating a point which it has required the present opinion to settle.

The judgment is reversed and the case is remanded for the purpose of determining: (a) the "actual damages" suffered by plaintiff; (b) whether or not defendant Arthur Murray, Inc. had participated in the statutory violations in such a manner as to cause it to be responsible for more than a judgment for such actual damages; (c) if Murray is liable for a statutory penalty, in what amount. Neither party shall recover costs on appeal.

Files, P. J., and Jefferson, J., concurred.

A petition for rehearing was denied on November 16, 1966, and the opinion was modified to read as printed above. The petitions of the appellant and the respondent for a hearing by the Supreme Court were denied December 21, 1966. Mosk, J., did not participate therein.