[Civ. No. 30905.   Second Dist., Div. Two.   Aug. 14, 1967.]

NORMA STAPLES et al., Plaintiffs and Appellants, v. ARTHUR MURRAY, INC., Defendant and Respondent.

508

Kenny, Morris & Ibanez and Richard A. Ibanez for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, John J. Hanson and John H. Sharer for Defendant and Respondent.

HERNDON, J.—Plaintiffs appeal from the judgment of dismissal entered following the sustaining of the demurrer of respondent Arthur Murray, Inc. to their second amended complaint.

Appellants are five women who allegedly paid respondent various amounts, reaching a total of approximately $40,000, for dancing lessons. The amounts range from $13.155.50 paid by one appellant to $2 075 paid by another. In the first count of the second amended complaint each appellant alleges that respondent and other named defendants, acting in concert and as partners, conspired to defraud each appellant.

In the second count each appellant specifically alleges that she entered into a written agreement with defendants pursuant to which she paid them lump sums in excess of $500, the maximum payment permissible under the Dance Act. (Civ. Code, § 1812.80 et seq.)[1] Each appellant also alleges that she

---

[1]Section 1812.80 of the Civil Code, effective September 15, 1961, provides: "(a) The Legislature finds that there exists in connection with a substantial number of contracts for health and dance studio services, sales

was not furnished with a copy of the agreement executed by her but that upon information and belief alleges that said contract failed to comply with the requirements of Civil Code section 1812.89, subdivision (a).[2] The third count is a common count for money had and received.

A special demurrer to the first count of appellants' complaint was sustained on the ground of uncertainty and leave to amend was denied after appellants' counsel indicated that "he ha[d] pleaded all of *the available facts*[3] in the Second Amended Complaint." (Italics added.) While the minute order of the trial court does not disclose the court's reasoning in this regard, it does appear that the order was based upon a holding that the particulars of the alleged fraud

practices and business and financing methods, which have worked a fraud, deceit, imposition, and financial hardship upon the people of this State; that existing legal remedies are inadequate to correct these abuses; that the health and dance studio industry has a significant impact upon the economy and well-being of this State and its local communities; that the abuses and problems which have arisen in the field of health and dance studio services are similar and substantial as to both industries and peculiar to both industries as to kind or extent; and that the provisions of this title relating to such contracts are necessary for the public welfare.

"(b) The Legislature declares that the purpose of this title is to safeguard the public against fraud, deceit, imposition and financial hardship, and to foster and encourage competition, fair dealing, and prosperity in the field of health and dance studio services by prohibiting or restricting false or misleading advertising, onerous contract terms, harmful financial practices, and other unfair, dishonest, deceptive, destructive, unscrupulous, fraudulent and discriminatory practices by which the public has been injured in connection with contracts for health and dance studio services."

For cases discussing respondent's activities in this state generally see *Nichols* v. *Arthur Murray, Inc.,* 248 Cal.App.2d 610 [56 Cal.Rptr. 728]; *People* v. *Arthur Murray, Inc.,* 238 Cal.App.2d 333 [47 Cal.Rptr. 700]; *Byrne* v. *Harvey,* 211 Cal.App.2d 92 [27 Cal.Rptr. 110]; *Chas. L. Harney, Inc.* v. *State of California,* 217 Cal.App.2d 77 [31 Cal.Rptr. 524].

Section 1812.86 of the Civil Code provides: "No contract for health or dance studio services shall require payment by the person receiving the services or the use of the facilities of a total amount in excess of five hundred dollars ($500)."

[2]Section 1812.89, subdivision (a), of the Civil Code provides: "Every contract for health or dance studio services shall contain a clause providing that if, by reason of death or disability, the person agreeing to receive services is unable to receive all services for which he has contracted, he and his estate shall be relieved from the obligation of making payment for services other than those received prior to death or the onset of disability, and that if he has prepaid any sum for services, so much of such sum as is allocable to services he has not taken shall be promptly refunded to him or his representative."

[3]Appellants contend that all further details concerning the transactions between the parties were unavailable to them because the records thereon were in the exclusive possession of the defendants and the trial court refused to permit the discovery proceedings required to obtain the information.

had not been sufficiently set forth. We have concluded that this determination was erroneous.

The facts underlying each appellant's cause of action were set forth separately and, while varying as to dates and amounts paid, are sufficiently similar that they may be fairly represented by quotations taken from the allegations made by the first appellant referred to in the complaint, Norma Staples. She alleged:

"16. On or about December 4, 1961, [on this date plaintiff delivered to defendants $2,000.00], on December 15, 1961, [on this date plaintiff delivered to defendants $5,000.00], and again on December 18, 1961, [on this date plaintiff delivered to defendants $4,018.00], and thereafter on other dates up to April 22, 1963 when the last sum was delivered by plaintiff to defendants to make the said total of $12,020.16, at 5019 Lankershim Boulevard, North Hollywood, California, defendants Robert DeKarlo, Jack Smersh, also known as Jack Martin, Juanita Cole, Doe One, Doe Two, in furtherance of the purposes of the conspiracy described in paragraph 12, and in behalf of each and every defendant named in paragraph 13 hereof, made oral promises to plaintiff as set forth in subparagraphs 15(a), 15(b), 15(c), 15(d), 15(e), which are repleaded here." The subparagraphs referred to contain the following allegations:

"(a) Defendants promised to plaintiff that she would achieve a high standard of dancing proficiency as described by defendants if she paid defendants in advance for a stated number of dancing instruction, adding that the 'Arthur Murray Method' of dancing instruction is different than any other method and for that reason such a promise could be made.

"(b) Defendants promised to plaintiff that if she paid for dancing lessons in advance she, at her option, could receive at any Arthur Murray Dance Studio in Southern California dancing instruction by competent and skillful dancing instructors teaching the 'Arthur Murray method'.

"(c) Defendants promised to plaintiff that if she paid for lessons in advance, defendants, periodically, would make an 'analysis' of plaintiff's dancing competence; also defendants promised plaintiff that periodically defendants would conduct 'tests', 'studio competitions', 'dancing derbies' to 'evaluate' the proficiency of plaintiff's dancing competence.

"(d) Defendants promised to plaintiff that upon completion of a given course of dancing lessons or upon reaching

a given level of proficiency in dancing, bonus dancing lessons would be given to plaintiff without charge.

"(e) Defendants promised to plaintiff that if she paid for lessons in advance there would always be available competent and qualified dancing instructors at any one of the many Arthur Murray Dance Studios in Los Angeles County and that at any one of them the plaintiff would be given the dancing lessons for which payment had been made in advance." This portion of appellants' complaint concluded:

"17. At the time the promises stated in paragraphs 15 and 16 hereof were made, defendants had no intention of keeping said promises or any one of them. Each of them was made in furtherance of said purpose and design and with intent to deceive plaintiff and to induce her to deliver money to defendants. The said promises and each of them were not kept by defendants in that:

"(a) The promise stated in 15(a) hereof was not kept by defendants: Plaintiff did not achieve the standard of dancing proficiency described by defendants despite the dancing instruction given to plaintiff by defendants during the years 1961 through 1963, and plaintiff's best efforts to achieve such standard.

"(b) The promise stated in 15(b) hereof was not kept. At a time when the plaintiff had paid for many dancing lessons in advance and dancing instruction was not available at the said North Hollywood Studio, plaintiff attempted to obtain lessons at the said Van Nuys Studio and other studios but instruction was denied to her.

"(c) The promise stated in 15(c) was never kept by defendants at any time. Although during the year 1961 through 1963 defendants conducted special events for the dancing students, participation therein depended upon the student paying additional money to defendants, but such special events did not relate to 'evaluating' plaintiff's dancing proficiency.

"(d) The promise stated in 15(d) was never kept by defendants.

"(e) The promise stated in 15(e) hereof was never kept by defendants. Plaintiff alleges that less than five percent (5%) of the dancing instruction received by her was given by competent and qualified dancing instructors. When plaintiff complained to defendants in regard to the instructor she was told that only if she paid for more dancing lessons in advance would she be furnished with qualified dancing instructors.

512

"18. Plaintiff believed the promises, and each of them, made by defendants. Plaintiff relied upon each of them. As a proximate result of said promises, and each of them, her said belief and reliance thereon, she delivered to the defendants the said sum of $12,020.16. Had plaintiff known that said promises, or any one of them, would not be kept by defendants, as in fact defendants did not, she would not have delivered to defendants the said sum nor any part thereof, and in consequence she has been damaged in the said sum."

In enacting the Dance Act, the Legislature took cognizance of the fraud, imposition and tragic hardship so generally present in transactions of the character alleged in appellants' pleadings. (Cf. *People* v. *Arthur Murray, Inc.*, 238 Cal.App. 2d 333, 343 et seq. [47 Cal.Rptr. 700].) The victims of such frauds rarely know the exact nature of the personal and business relationships of the parties who victimize them, but such lack of knowledge does not defeat them in the prosecution of their cause of action for known fraud.

It is true that appellants' complaint also alleges that some of the fraudulent misrepresentations made to them personally by the named persons on the named dates were also made by the defendants generally in various newspapers and radio and television advertising. However, such allegations, while perhaps insufficient, standing alone, to state a cause of action for fraud, do not detract from the legally sufficient allegations, which respondent for the purposes of its demurrer has conceded to be true, that *each* of these fraudulent misrepresentations was made to them personally as recited above.

"The authorities on the subject require no more than that the allegations 'be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud.' [Citation.] This requirement has been met." (*Maxwell* v. *City of Santa Rosa*, 53 Cal.2d 274, 280-281 [1 Cal.Rptr. 334, 347 P.2d 678].)

We are unable to perceive any tenable basis for the sustaining of respondent's general demurrer to appellants' complaint seeking to enforce the provisions of the Dance Act.[4]

[4]Section 1812.91 of the Civil Code provides: "Any contract for health or dance studio services which does not comply with the applicable provisions of this title shall be void and unenforceable as contrary to public policy."

Section 1812.92 of the Civil Code provides: "Any contract for health or dance studio services entered into in reliance upon any willful and false, fraudulent, or misleading information, representation, notice or advertisement of the seller shall be void and unenforceable."

In its effort to support this ruling respondent cites cases dealing with contract actions which require either that the written contract be set out verbatim in the complaint, attached as an exhibit or be pleaded in full in accordance with its legal effect. (Cf. 2 Witkin, Cal. Procedure (1954) § 252, p. 1227.) This rule has no application here where the action is one brought to enforce a statutory right and in which appellants allege, and respondent's demurrer admits, that appellants were not given copies of the contracts containing the proscribed provisions. (39 Cal.Jur.2d, Pleading, § 82, p. 121, and cases cited therein.)

In view of our holding regarding the sufficiency of appellants' complaint, we need not consider their secondary contention that the trial court erred in refusing to permit them to utilize discovery proceedings in order to obtain the information required to resolve the uncertainties in their complaint asserted by respondent as a ground of its demurrer.

The judgment is reversed.

Roth, P. J., and Fleming, J., concurred.

---

Section 1812.94, subdivision (a), of the Civil Code provides: "Any buyer injured by a violation of this title may bring an action for the recovery of damages. Judgment may be entered for three times the amount at which the actual damages are assessed plus reasonable attorney fees."