CITY OF DELTA JUNCTION, Appellant and Cross-Appellee,

v.

MACK TRUCKS, INC. and Alaska Mack, Inc., Appellees and Cross-Appellants.

Nos. 5814, 5872.

Supreme Court of Alaska.

Sept. 2, 1983.

Joseph W. Sheehan, Fairbanks, for appellant and cross-appellee.

Charles D. Silvey and Walter J. Sczudlo, Merdes, Schaible, Staley & DeLisio, Inc., Fairbanks, for appellees and cross-appellants.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

BURKE, Chief Justice.

This appeal presents two issues: first, whether the superior court erred in granting appellee Mack Trucks, Inc.'s [hereinafter "Mack, Inc."] motion for directed verdict on the issue of apparent authority; second, whether the superior court erred in refusing to grant the City of Delta Junction's [hereinafter "the City" or "Delta"] motion to reopen its case in chief. Because we hold that the superior court erroneously granted the motion for directed verdict, it is unnecessary for us to decide the second issue.[1]

In 1975, the City procured a grant from the State of Alaska for fire-fighting equipment. Bid invitations for construction of a custom fire truck were sent to several fire vehicle manufacturers, including Mack, Inc., in Allentown, Pennsylvania. Delta received only one response to its bid invitations, and that bid was for an amount in excess of the funds which had been made available by the state. Consequently, the City revised the specifications to call for a more modest vehicle which could carry and pump 4,000 gallons of water.

These specifications were sent only to major truck and equipment manufacturers in Alaska and were not reduced to bid invitation form, in an effort to speed delivery to meet the deadline of the state grant. Three proposals were received and the City decided to purchase a fire tanker from Alaska Mack, Inc., [hereinafter "Alaska Mack"] a Fairbanks dealer, and a defendant below.

Alaska Mack's proposal, consisting of a Mack chassis adapted to carry a 5,000 gallon tank, generally conformed to the City's needs. The tank was fabricated by a Fairbanks firm under contract with Alaska Mack, and was installed by Alaska Mack after removal of a sleeper cab and fifth wheel which were originally attached to the truck. Alaska Mack delivered the modified truck to the City on August 6, 1976.

Even before delivery, however, the City's fire chief expressed concern that the vehicle might exceed the state's maximum weight limitations. After delivery, the fire chief discovered that the truck, when loaded, exceeded the manufacturer's specified gross weight limits. The truck proved dangerously unbalanced and difficult to drive. Subsequent modifications made by Alaska Mack failed to correct the problems. The parties have stipulated that the truck is unfit for its intended use.

The City brought suit for breach of express and implied warranties against Alaska Mack as seller of the vehicle and against Mack, Inc. under a theory of apparent agency. An order of default was entered against Alaska Mack when it did not appear at trial or otherwise defend against the City's claims.

The trial court granted Mack, Inc.'s motion for a directed verdict at the close of the City's case, finding no evidence from which a jury could conclude that Alaska Mack was acting with apparent authority for Mack, Inc. The City's motion to reopen its case was denied.

■ "Apparent authority may ... arise because the agent has been placed in such a position that a person of ordinary prudence, who was conversant with the nature of the particular business and its usages, would be justified in believing that the agent was authorized." W. Sell, Agency § 35, at 26 (1975). *See* W. Seavey, Handbook of the Law of Agency, § 8, at 13 (1964). Apparent authority is easily distinguished from an agent's power to bind the principal with the principal's consent. Both, however, result in the principal's liability for the acts of the agent or apparent agent, including liability for breach of warranty. *See Distillers Distributing Corp. v. Sherwood Distilling Co.,* 180 F.2d 800, 804–05 (4th Cir.1950).

---

1. On cross-appeal, Mack, Inc. raises a third issue under AS 45.02.607(c), claiming that Delta failed to give Mack, Inc. timely notice of breach. The superior court did not address this issue in granting Mack, Inc.'s motion for directed verdict. It is thus not properly before this court.

■ The general rule for creation of apparent authority is contained in Restatement (Second) of Agency § 27:

> [A]pparent authority to do an act is created as to third persons by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.

*Id.* at 103. It is important to note that it is the *principal's* conduct that gives rise to his liability. Thus, "the one dealing with the agent must prove that the principal was responsible for the appearance of authority by doing something or permitting the agent to do something that led others, including the plaintiff, to believe that the agent had the authority he purported to have." W. Seavey, *supra.*

■ The question of apparent authority often arises in the context of franchise businesses or dealerships where consumers or suppliers attempt to hold the franchisor liable for the acts of the franchisee. *See* Note, *Liability of a Franchisor for Acts of the Franchisee,* 41 S.Cal.L.Rev. 143 (1968). Whether or not the franchisor's acquiescence in a franchisee's use of a corporate logo or a name incorporating a trade name creates apparent authority in the franchisee is a question of fact for determination by the jury. *Gizzi v. Texaco, Inc.,* 437 F.2d 308, 310 (3d Cir.1971); *Billops v. Magness Construction Co.,* 391 A.2d 196, 199 (Del. 1978); *Agosto v. Leisure World Travel, Inc.,* 36 Ohio App.2d 213, 304 N.E.2d 910 (1973).

*See also Beck v. Arthur Murray, Inc.,* 245 Cal.App.2d 976, 54 Cal.Rptr. 328 (1966).

■ In *Gizzi v. Texaco, Inc.,* 437 F.2d 308, a service station patron brought a personal injury action against Texaco, Inc. under an apparent authority theory of liability. An independent service station displaying the Texaco insignia and the nationally advertised slogan, "Trust your car to the man who wears the star," had repaired the brakes of a used van and sold it to the plaintiff. The brakes failed soon after the plaintiff took possession. The trial court granted Texaco's motion for directed verdict. The United States Court of Appeals, Third Circuit, vacated the judgment and remanded, holding that it was the province of the jury to determine the apparent authority question.[2]

■ In the instant case, the superior court held that there was no apparent agency between Mack, Inc. and Alaska Mack as a matter of law, and granted Mack's motion for a directed verdict. Our standard of review for a directed verdict is to determine whether the evidence, and all reasonable inferences which may be drawn from the evidence, viewed in the light most favorable to the non-moving party, permits room for diversity of opinion among reasonable jurors. *City of Whittier v. Whittier Fuel & Marine Corp.,* 577 P.2d 216, 220 (Alaska 1978); *Ferriss v. Chugach Electric Association,* 557 P.2d 763, 765 (Alaska 1976); *Holiday Inns of America, Inc. v. Peck,* 520 P.2d 87, 92 (Alaska 1974).

**2.** The right to jury determination of questions of fact has been recognized at common law since *Bushell's Case,* 124 Eng.Rep. 1006 (1670). *See* Blume, *Origin and Development of the Directed Verdict,* 48 Mich.L.Rev. 555 (1950). Justice Murphy aptly described the historic role of the jury as follows:

> It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable.

*Tennant v. Peoria & Pekin Union Railway,* 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520, 525 (1944). The jury brings broad practical experience to bear on the evidence, *see* Cooper, *Directions for Directed Verdicts: A Compass for Federal Courts,* 55 Minn.L.Rev. 903, 922 (1971), and motions for directed verdict should be scrutinized under a principle of minimum intrusion into the right to jury trial guaranteed under the Alaska Constitution. Art. I, § 16, Alaska Const. If there is any doubt, questions of fact should be submitted to the jury. Note, *Directed Verdicts and New Trials—Their Relationship to the Right to Trial by Jury,* 9 Mem. St.U.L.Rev. 493, 499 (1979).

The evidence in this case, viewed in the light most favorable to the City, is as follows: Mack, Inc. allowed Alaska Mack to use the term "Mack" as part of its corporate name. Alaska Mack was listed in trade journals and the Fairbanks telephone directory under the heading "MACK TRUCKS." The telephone directory listing displayed the familiar Mack bulldog trademark, and read:

MACK TRUCKS
SALES, PARTS & SERVICE
Heavy-Duty Trucks
On and Off highway
City and Suburban
Construction—Fire
NEW AND USED
Built Like A Mack Truck . . .
It's Part of the Language
　'FOR INFORMATION CALL'
ALASKA MACK, INC.
7 Mile Rich Hwy . . . . 488–2100

The Alaska Mack dealership bore a large sign on the outside which stated, "Alaska Mack, Inc., Mack Trucks," displaying the Mack bulldog. Inside, the Mack logo and Mack truck posters were prominently displayed in several places. Printed brochures advertising Mack trucks were on Alaska Mack's counter. Alaska Mack did not display promotional materials of any manufacturer other than Mack, nor were there any signs indicating that Alaska Mack was independently operated.

Delta's Mayor and fire chief at the time of acquisition testified that they believed they were dealing with Mack, Inc. when they contacted Alaska Mack. The fire chief stated that the city council was persuaded to accept Alaska Mack's proposal, the most expensive of the proposals received, on the basis of the manufacturer's reputation. Similarly, the chief of maintenance of the City's volunteer fire department was not aware that Alaska Mack and Mack, Inc. were separate entities. The fire chief who assumed control of Delta's fire department during the unsuccessful attempts to repair the vehicle testified, by deposition, that when he talked to Alaska Mack about the truck's deficiencies he believed he was communicating with Mack, Inc.

It is fair to say, as did one of Alaska Mack's advertisements, that "Mack" has become part of the language. The corporate name and trademark, the latter being surely the most famous bulldog ever to stand atop a radiator, have been part of the American scene for decades, as familiar to most as apple pie and baseball. The average citizen, who couldn't name five vice presidents to save himself from eternal damnation, will recognize a Mack advertisement as far as the eye can see. It makes little difference to him whether the particular advertiser is Alaska Mack or Mack, Inc. The important thing, we have been taught to believe, is that the product is a "Mack," and built accordingly.

■ Mack Inc., therefore, has a vital interest in the use of the name "Mack," and advertisements such as those used by Alaska Mack; its nationwide business and reputation are at stake. It is unlikely that an unauthorized use of these symbols would have gone unnoticed by Mack, Inc., and that has not been suggested. Thus, it can reasonably be inferred that Alaska Mack's use of these items was with Mack, Inc's knowledge and approval. Whether its acquiescence in their use was sufficient to bind Mack, Inc. under Delta's theory of apparent authority, was a jury question.[3]

■ We express no opinion on whether these indices of authority are, in fact, sufficient. We hold, only, that reasonable jurors could disagree on the impression that may have been conveyed to the public. Further, reasonable jurors could hold conflicting opinions on whether the City acted reasonably under the circumstances, in relying on Alaska Mack's alleged apparent authority.[4]

---

**3.** We do not consider representations which may have been made by Alaska Mack regarding its authority to represent Mack, Inc. We are concerned here only with the inferences to be drawn from Mack, Inc.'s own conduct, in this case conduct consisting of acquiescence.

**4.** Our dissenting colleague believes that the acts of Alaska Mack, in fabricating this particu-

REVERSED and REMANDED for further proceedings not inconsistent with this opinion.

MATTHEWS, Justice, dissenting.

The majority opinion correctly defines the law of apparent authority, but in my opinion has misapplied it to the facts of this case. For that reason, I dissent.

As the majority opinion states:

[A]pparent authority *to do an act* is created as to a third person by written or spoken words or any other conduct of the principal which, *reasonably interpreted,* causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.

Restatement (Second) of Agency § 27 (1958) (emphasis added). A crucial question in apparent authority cases is what "act" there was apparent authority to perform. The "act" involved here is the redesigning, significant alteration, and refabrication of a stock Mack truck, resulting in the removal of the sleeper cab and fifth wheel and installation of a 5000 gallon water tank on the chassis. The question is whether Mack, "by written or spoken words or any other conduct," created an appearance that could lead the City reasonably to conclude that Mack consented to have this redesigning, significant alteration, and refabrication of a stock Mack truck done by Alaska Mack on Mack's behalf.

On review of the grant of a motion for a directed verdict, we must determine whether the evidence, even when viewed in a light most favorable to the nonmoving party, justifies the decision that reasonable jurors could not disagree on the conclusions to be reached from the evidence. *Bullard v. B.P. Alaska, Inc.,* 650 P.2d 402, 403 (Alaska 1982); *Central Alaska Broadcasting v. Bracale,* 637 P.2d 711, 714 (Alaska 1981). The majority relies upon the following evidence in determining that the court erred in granting the directed verdict:

1. Mack allowed Alaska Mack to use the name "Mack" as part of its corporate name.

2. Alaska Mack was listed in trade journals and the Fairbanks telephone directory under the heading "MACK TRUCKS."

3. The telephone directory listing used the Mack bulldog trademark.

4. There was a sign on the Alaska Mack building saying "Alaska Mack, Inc., Mack Trucks" that displayed the Mack bulldog.

5. The Mack logo and Mack posters were displayed inside.

6. Alaska Mack distributed printed Mack brochures in its building.

7. Alaska Mack did not display promotional materials of any manufacturer other than Mack.

8. There were no indications that Alaska Mack was independently operated.

Even indulging every reasonable inference for the City from these items of evidence, the most that a reasonable jury could conclude would be that Alaska Mack was authorized to sell and service Mack trucks. However, none of the testimony relied upon indicates directly or gives rise to the inference that Alaska Mack was in the business of redesigning and altering Mack trucks for Mack, or under Mack's direction. Indeed, the trial court relied partially upon the paucity of evidence on this point in granting the directed verdict:

Relating this case to [*Gizzi v. Texaco, Inc.,* 437 F.2d 308 (3d Cir.1971)], there is also no evidence in the record to show that Mack Trucks, Inc. ever approved or acknowledged the use of Mr. Haskins or anyone else to refurbish this vehicle into a fire truck. And although they very well may on a national basis allow such things to be done, there is no evidence to that effect, and I have no way of knowing whether they do or not. And there's certainly no evidence that they ever advertised this sort of rebuilding is done by Mack Truck agents or personnel in other

lar fire truck, were beyond the limits of any apparent authority it had to act on behalf of

Mack, Inc. Implicit in our holding is the belief that this too is a question for the jury.

organizations, such as in the Texaco station case.

The trial court obviously perceived the proper issue in this case and ruled accordingly. I fail to see how the majority can conclude that this "is a question for the jury," when there is a dearth of evidence from which a jury could find apparent authority to redesign and refabricate this fire truck. Although I agree that questions of fact are for the jury when there is any doubt, the evidence in this case leaves no doubt that Mack created no impression that would give rise to a reasonable conclusion that Alaska Mack had authority to alter this truck as it did. I would affirm the grant of the directed verdict.

If the verdict were affirmed, as it should be, the question would still exist whether the court properly denied the City's motion to reopen after granting the directed verdict to Mack. I believe that the court acted properly. The City offered to present evidence to prove:

1. A distributorship agreement existed between Mack and Alaska Mack.

2. The agreement required Mack to approve its distributors based on their competence and skill.

3. Mack required that the shops maintain certain parts inventories.

4. Mack required sales and services signs.

5. Mack provided training centers for distributors' employees.

6. Mack engaged in national advertising programs and in joint advertising with distributors.

7. All sales of Mack products were made through distributors; i.e., the factory would not sell directly to the public.

8. Mack has established sales quotas.

9. Mack required distributors to submit reports as to the use of the vehicles sold.

None of this proffered evidence indicated that Mack had engaged in or acquiesced in Alaska Mack's engaging in conduct which created the appearance that Alaska Mack was authorized to redesign and refabricate stock Mack trucks. Therefore, the trial court acted properly in refusing to reopen the case. The judgment should be affirmed in all respects.