*Notice:* This opinion is subject to correction before publication in the PACIFIC REPORTER. *Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| SUSAN TAYLOR, ) | |
| ) | Supreme Court No. S-14211 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-04-04501 CI |
| v. ) | |
| ) | O P I N I O N |
| WELLS FARGO HOME ) | |
| MORTGAGE and ROUTH ) | No. 6782 - May 17, 2013 |
| CRABTREE, P.C., ) | |
| Appellees. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Craig Stowers, John Suddock, and Gregory A. Miller, Judges.

Appearances: Yale H. Metzger, Law Offices of Yale H. Metzger, Anchorage, for Appellant. George M. Cruickshank, Routh Crabtree, APC, Anchorage, for Appellee Wells Fargo Home Mortgage, Richard L. Crabtree, Routh Crabtree, APC, Anchorage, for Appellee Routh Crabtree, P.C.

Before: Carpeneti, Chief Justice, Fabe and Winfree, Justices. [Stowers, Justice, not participating.]

CARPENETI, Chief Justice.

## I.    INTRODUCTION

A woman purchased a home and fell behind on her mortgage payments. Despite the bank having agreed to postpone a foreclosure sale, the bank proceeded with the sale. After the woman threatened suit, the bank re-purchased the home and entered

into settlement negotiations with the woman; the bank promised to re-convey the property to the woman so that she could proceed with a sale to a third party. The bank subsequently refused to perform and the woman sued both the bank and the bank's counsel for breach of the settlement agreement and fraudulent inducement.

The superior court granted partial summary judgment to the woman on her breach of contract claim, finding that a binding settlement contract had been formed between the woman and the bank. The woman then filed for bankruptcy. The bankruptcy trustee sold the property and the bankruptcy estate abandoned the present state court claim, placing the remaining balance from the sale of the property into the superior court registry.

The superior court held a bench trial on the remaining fraud claim and on the parties' respective damages. At the conclusion of the woman's case, the court granted a directed verdict to the bank and the bank's counsel on the fraud claim. The superior court awarded the bank the unpaid loan balance as well as the fair rental value of the property for the woman's post-foreclosure occupancy of the property, and awarded the woman lost sale damages. The superior court also awarded the parties prejudgment interest, and later awarded the bank and its counsel attorney's fees.

The woman appeals the superior court's final judgment. Because the bank abandoned its claim for rental damages at trial, we reverse the superior court's award of rental damages and any accompanying award of prejudgment interest. Because any right to recover fees for work performed on behalf of the dismissed defendants has been waived, because it was error to award attorney's fees to the bank's counsel in responding to the bankruptcy petition, and because the superior court did not properly calculate attorney's fees under Alaska Civil Rule 68, we remand to recalculate attorney's fees. We affirm the superior court in all other respects.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

Susan Taylor purchased a house in Anchorage in October 2002.  Wells Fargo Home Mortgage held the primary mortgage on the house, and Capital One Credit Union held a second mortgage.  Sometime around May 2003, Taylor fell behind on her payments to Wells Fargo.  Routh Crabtree, P.C.,[1] which represented Wells Fargo throughout the present case, initiated a nonjudicial foreclosure sale of the property on behalf of Wells Fargo.  A foreclosure sale was scheduled for January 6, 2004.  Upon learning of the foreclosure, Taylor listed the property for sale through a real estate agent, Charles Stone, who located a buyer and secured an offer on the property.  Stone contacted Routh Crabtree to postpone the foreclosure sale.  Despite Stone apparently having reached agreement with Routh Crabtree to postpone the sale, the sale proceeded as scheduled on January 6.  After Taylor learned of the foreclosure sale, she contacted

---

[1]   Taylor disputed the naming of "Routh Crabtree" throughout the proceedings.  In her February 17, 2004 complaint, Taylor named "Routh Crabtree, P.C." as a defendant.  At the time Taylor filed her initial complaint, "Routh Crabtree, P.C." was a business alias used by a professional corporation formally incorporated as "Stephen Routh, P.C."  On April 22, 2004, "Stephen Routh, P.C." formally changed its corporate name to "Routh Crabtree, P.C."  On August 4, 2005, after Taylor moved to amend her complaint pursuant to Alaska Civil Rule 15 to better represent the parties as they existed at the time of the original dispute, the superior court added the following defendants to the present case: "Stephen Routh, P.C. and Richard Crabtree, a partnership"; and "Richard Crabtree, individually."  In 2009, the parties stipulated to dismiss "Stephen Routh, P.C. and Richard Crabtree, a partnership," as well as "Richard Crabtree, individually."  In her limited non-opposition to the dismissal of these two parties, Taylor stated that her "understanding of [the] stipulation was that . . . there would be no adverse consequences to [Taylor] caused by the substitution, for example . . . the partnership would not be entitled to any defense attorney's fees."  Finally, on January 19, 2010, both "Stephen Routh, P.C. and Richard Crabtree, a partnership," as well as "Richard Crabtree, individually," were dismissed with prejudice.  The present case therefore continued solely as between Taylor, Wells Fargo, and "Routh Crabtree, P.C."

a local television station, which publicized the sale. At the time of the foreclosure sale, Taylor owed Wells Fargo $199,588 as the balance on her loan.

Taylor threatened suit against Wells Fargo. On January 28, 2004, Richard Ullstrom, an attorney at Routh Crabtree, sent a letter on behalf of Wells Fargo to Taylor's attorney. The letter, in pertinent part, stated:

> Wells Fargo Home Mortgage has entered into an agreement with the party who acquired the Taylor property at the foreclosure sale, to refund the purchase price in return for a deed of the property and a release of all claims. Wells Fargo will then be in a position to return title to the property to Ms. Taylor to allow her to close her sale of the property.
>
> As a condition of doing so, Wells Fargo Home Mortgage will of course require that Ms. Taylor execute a release of all claims she might have in connection with the foreclosure and foreclosure sale. If she is willing to do this, I anticipate that we can have this matter wrapped up by the end of the week. Please advise if she is willing to do so, and if so, I will draft the necessary paperwork.

Taylor's attorney, Yale Metzger, responded the next day. His letter, in pertinent part, stated:

> This will acknowledge receipt of Mr. Ullstrom's facsimile dated January 28, 2004, and the settlement offer contained therein. Ms. Taylor has instructed me to communicate her acceptance of Wells Fargo's settlement offer. This letter should be considered that acceptance. Please forward a draft of the release you require Ms. Taylor to sign for my review.

On January 31, Ullstrom sent a draft of the release to Taylor. The last paragraph of the draft release contained a confidentiality provision:

> The terms and conditions of this Release and underlying agreement shall be confidential. Except as provided above or required by law, court order, the enforcement of the provisions hereof, or as may be reasonably required by

> creditors, beneficiaries, bureaus, auditors, accountants or tax consultants of the respective parties, or any regulatory or governmental agency, the parties and their counsel shall maintain in strict confidence and shall not disclose the substance or contents of this Release to any third party without the written consent of the parties herein.

On February 4, 2004, Metzger responded that "[t]he draft release conforms with the agreement of the parties except for the last paragraph concerning confidentiality." Metzger struck the confidentiality provision and Taylor signed the release, thereby tendering her performance under the terms of the alleged settlement agreement. Wells Fargo thereafter refused to perform and maintained that it was not willing to settle without the inclusion of a confidentiality provision.

On February 20, 2004, the buyer at the foreclosure sale quitclaimed all his interest in the property to Wells Fargo.

## B.  Proceedings

In February 2004, Taylor filed suit against Wells Fargo and Routh Crabtree, P.C.[2] Taylor asserted two claims relevant to this appeal:  (1) the letters exchanged between Taylor and Wells Fargo created a binding settlement contract, which Wells Fargo breached when it refused to perform; and (2) Wells Fargo, through its agent, Routh Crabtree, fraudulently induced Taylor into accepting a settlement offer that it would not perform unless Taylor agreed to an added confidentiality provision.  Three days later Taylor filed a lis pendens on the property.

Wells Fargo counterclaimed and sought the following relief:  (1) that Taylor's claim be dismissed with prejudice; (2) that Wells Fargo be awarded judgment

---

[2]     Taylor's complaint also named two other parties: (1) Larry Rhymer, the purchaser at the foreclosure sale; and (2) Land Title Company of Alaska.  Neither Rhymer nor Land Title Company of Alaska are relevant to this appeal.  Rhymer was dismissed in September 2004.  Land Title Company of Alaska settled pre-bankruptcy.

for Taylor's use and occupancy of the property beginning February 20, 2004, the date on which it gained possession of the property from the buyer at the foreclosure sale;[3] (3) that Wells Fargo be decreed owner of the property; and (4) that Wells Fargo be awarded attorney's fees and costs. Routh Crabtree responded and requested the following relief: (1) that Taylor's claim be dismissed with prejudice; and (2) that Routh Crabtree be awarded attorney's fees and costs.

In December 2004, Superior Court Judge Craig Stowers granted partial summary judgment in Taylor's favor on the breach of contract question. The court determined that Wells Fargo made an offer to settle with Taylor in its January 28, 2004 letter, which did not include a confidentiality provision. The court held that Taylor accepted this offer in her January 29, 2004 letter. Based on this finding, the court ordered specific performance. The superior court additionally stated that "[t]he court also intends to exercise its equitable authority to require [Taylor] to pay defendant for the fair value of her occupancy of the premises from the date that she stopped paying until the date that the premises is tendered back to [Wells Fargo]."

On October 15, 2005, Taylor filed for relief under Chapter 7 of the U.S. Bankruptcy Code. In accordance with 11 U.S.C. § 362,[4] the proceedings in the present case were stayed pending the outcome of the bankruptcy proceedings. During the bankruptcy proceedings, the bankruptcy trustee unsuccessfully attempted to facilitate a settlement agreement between Taylor and Wells Fargo. In February 2006, the

---

[3]     Taylor retained occupancy of the property post-foreclosure. In its November 9, 2010 Findings of Fact, Conclusions of Law, and Order, the superior court determined that, although Taylor vacated the premises in May 2004, Wells Fargo was not notified of her leaving until December 2004.

[4]     Section 362 is the automatic stay provisions of the U.S. Bankruptcy Code. *See* 11 U.S.C. § 362 (2006).

bankruptcy court granted Taylor a discharge in bankruptcy.[5]  In 2007, the trustee persuaded Taylor to release the lis pendens and obtained the consent of the parties to sell the property.  After also obtaining the bankruptcy court's approval, the trustee sold the property for $298,000.

In January 2008, the trustee filed a motion under 11 U.S.C. § 554[6] to approve the abandonment of the bankruptcy estate's interest in the present case and in approximately $240,000 in funds remaining from the sale proceeds of the property.  The trustee noted that the interests of Taylor and Wells Fargo in the funds should "attach . . . as the Superior Court may determine. . . .  But what those interests are will have to be determined by the Superior Court in the action Susan Taylor filed against Wells Fargo pre-petition."  The trustee also filed a companion motion under 11 U.S.C. §§ 503[7] and 506(c)[8] "to recover his costs and expenses and compensation, and the fees and expenses of his attorney, from the proceeds of the sale of real property in this case . . . ."  In this

---

[5]    The formal notice of Taylor's discharge does not appear in the record.

[6]    Section 554(a) provides for abandonment of "any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554 (2006).

[7]    Section 503 provides for the payment of administrative expenses in bankruptcy proceedings.  *See* 11 U.S.C. § 503 (2006).

[8]    Section 506(c) provides:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

11 U.S.C. § 506(c) (2006).

companion motion, the trustee reiterated his intention to "let [Taylor and Wells Fargo] fight over the Funds." In February 2008, the bankruptcy court approved the trustee's request to abandon the remainder of the funds to the superior court's registry account "with the interests of Wells Fargo and Susan Taylor to attach to those funds as their interests may be determined."

In December 2008, Wells Fargo and Routh Crabtree made an offer of judgment to Taylor under Alaska Rule of Civil Procedure 68 and AS 09.30.065.[9] They offered $23,264.60 to be paid to Taylor from the court registry, with the remaining funds paid to Wells Fargo. This offer was made "in full and final resolution of all claims and counterclaims brought, or which could have been brought, by each and every party . . . inclusive of all principal, interest, applicable penalties, costs, attorney's fees, and/or relief to which any party may be entitled." Taylor did not accept this offer.

In March 2010, Superior Court Judge John Suddock held a bench trial on the remaining issues.[10] The parties each presented evidence regarding damages, and Taylor presented evidence regarding her fraud claim. Wells Fargo also abandoned its claim for rental damages for Taylor's post-foreclosure occupancy of the property. In support of her fraud claim, Taylor relied on Wells Fargo's admission during discovery that "there was never a time when the confidentiality clause was not considered a part

---

[9] Both Alaska R. Civ. P. 68(a) and AS 09.30.065(a) provide that:

At any time more than 10 days before the trial begins, either the party making a claim or the party defending against a claim may serve upon the adverse party an offer to allow judgment to be entered in complete satisfaction of the claim for the money or property or to the effect specified in the offer, with costs then accrued.

[10] After the superior court's entry of partial summary judgment in Taylor's favor in 2004, Judge Suddock replaced Judge Stowers as the judge presiding in this case.

of any agreement with [Taylor]." During trial, Erin Hirzel Roesch, an employee of Wells Fargo, testified that, prior to the time of the disputed settlement agreement, Wells Fargo had a policy in place that all settlement agreements would contain confidentiality provisions. Moreover, Roesch testified that this was not the first matter in which Routh Crabtree had represented Wells Fargo. But Roesch also testified that Wells Fargo only would have communicated its policy regarding confidentiality to Routh Crabtree "in a general sense as a requirement," and that Wells Fargo would not have reviewed Routh Crabtree's January 28, 2004 letter to Taylor before it was sent.

At the close of Taylor's case at trial, Wells Fargo and Routh Crabtree moved for a directed verdict on Taylor's fraud claim. The superior court found "that no reasonable Court or jury could find that there was fraudulent intent or damage flowing from justifiable reliance on something that turned out to be a misrepresentation because there was no misrepresentation. There was an offer and acceptance. There was a settlement. The settlement holds." On this basis the superior court granted the motion for a directed verdict. Finally, during closing argument at trial, Taylor for the first time argued that Wells Fargo's failure to produce a written deed of trust note violated the statute of frauds and precluded Wells Fargo from recovering the unpaid loan balance.

In November 2010, the superior court entered its Findings of Fact, Conclusions of Law, and Order, in which it primarily considered the parties' damages. The court first found that Taylor vacated the property in May 2004, that Wells Fargo received effective notice of her departure in December 2004, and that Wells Fargo repossessed the home on or about December 15, 2004. The court also made a number of findings regarding the calculation of Taylor's damages, including that: (1) it was reasonable to set the fair rental value of the property at $1,500 per month; (2) Taylor had successfully negotiated her second deed of trust on the property to $6,000; (3) it was reasonable to set the brokerage commission for Taylor's sale of the property at six

percent; (4) Taylor's estimated costs of sale of the property were one percent; and (5) Wells Fargo's claim of $5,732 for damages to the property were unsupported by the evidence.

The superior court then concluded that: (1) but for Wells Fargo's breach, Taylor would have netted $15,287 from the sale of the property to a third party; (2) Taylor was not entitled to emotional distress damages or consequential damages; and (3) Taylor was liable for occupancy of the property post-foreclosure at a total cost of $17,250. The court also awarded Wells Fargo $199,588, the balance of its deed of trust at the time of foreclosure. The court awarded Taylor $15,287 in lost sale damages against Wells Fargo. Taylor recovered nothing against Routh Crabtree. In a later Amended Final Judgment, the superior court awarded Wells Fargo $52,843 in prejudgment interest on the deed of trust, and $3,973 in prejudgment interest on the rental value. The court awarded Taylor $4,047 in prejudgment interest.

In February 2011, Taylor filed a motion for attorney's fees under Alaska Civil Rule 82. In her motion, Taylor asserted that "[t]he main issue in the captioned case was whether Wells Fargo . . . and Routh Crabtree . . . breached the settlement agreement with Susan Taylor in early 2004 by refusing to perform according thereto." On the same day, Wells Fargo filed a motion for attorney's fees in which it asserted that, because Taylor's final recovery against Wells Fargo was more than ten percent less favorable than Wells Fargo and Routh Crabtree's December 2008 Rule 68 Offer of Judgment, it was the prevailing party. Also on February 17, 2011, Routh Crabtree filed a motion for attorney's fees in which it asserted that it was entitled to enhanced attorney's fees on two alternative grounds: (1) that the relief awarded Taylor was substantially less than the Rule 68 Offer of Judgment; and (2) that Taylor engaged in vexatious, bad faith conduct.

In May 2011, the superior court entered its order on attorney's fees. The court first sua sponte reconsidered its decision to award prejudgment interest to Wells

Fargo, at least as far as this issue related to the court's award of attorney's fees.[11] The court made two distinct observations regarding its award of prejudgment interest to Wells Fargo. First, the court concluded that it "erred when it charged Ms. Taylor prejudgment interest both on the unpaid $17,[250] in rent and the unpaid loan for 2004." Second, the court concluded that it erred in awarding Wells Fargo prejudgment interest on the unpaid loan, since Wells Fargo had "slept on its rights." The superior court then found that Taylor's fraud claim constituted the main issue in the case, and thus Wells Fargo and Routh Crabtree, as the prevailing parties on that issue, were entitled to attorney's fees under Civil Rule 82. The court also determined that Wells Fargo was a prevailing party under Civil Rule 68(c), finding that Taylor's equity recovery, offset by Wells Fargo's rental recovery, was substantially less than Wells Fargo's offer of judgment. The court then concluded that, although it considered Taylor's fraud claim to have been unreasonable, the claim was not vexatious. The court awarded Routh Crabtree 60% of its attorney's fees that had accrued since Taylor had filed for bankruptcy, or $15,165. The court awarded Wells Fargo $29,868 in attorney's fees.

All of the parties then moved for reconsideration of the superior court's order regarding attorney's fees. In an August 24, 2011 order, the superior court declined to modify its prior award of attorney's fees, but the court struck the paragraph stating that Wells Fargo had "slept on its rights."[12]

Taylor appeals the superior court's final judgment.

_____

[11] The superior court noted that, because Taylor had already appealed the court's decision, the court lacked jurisdiction to alter the judgment itself. Thus, the superior court's discussion of prejudgment interest affected only the court's award of attorney's fees.

[12] Due to a potential conflict of interest, Judge Suddock recused himself in June 2011. Superior Court Judge Gregory A. Miller ruled on the parties' reconsideration requests.

## III. STANDARD OF REVIEW

"We apply our independent judgment to the interpretation of Alaska statutes and will interpret statutes 'according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters.' "[13] We review de novo the grant of a directed verdict.[14]

"We exercise our independent judgment in reviewing the superior court's interpretation of Alaska Civil Rule 68."[15] "We review a trial court's prevailing party determination [under Alaska Civil Rule 82] for abuse of discretion. We will reverse a prevailing party determination only if it is arbitrary, capricious, manifestly unreasonable, or improperly motivated."[16]

## IV. DISCUSSION

### A. It Was Error To Award Wells Fargo Damages For Taylor's Post-Foreclosure Occupancy Of The Property.

The superior court awarded Wells Fargo the fair rental value of the property for Taylor's post-foreclosure occupancy of the house. "Wells Fargo's breach," the court concluded, "did not entitle [Taylor] to live in the house without compensation to the

---

[13]    *In re Tracy C.*, 249 P.3d 1085, 1089 (Alaska 2011) (internal citation omitted) (quoting *Native Vill. of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999)).

[14]    *Cameron v. Chang-Craft*, 251 P.3d 1008, 1018 (Alaska 2011) (citing *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1117 (Alaska 2009)).

[15]    *Progressive Corp. v. Peter ex rel. Peter*, 195 P.3d 1083, 1087 n.7 (Alaska 2007) (citing *Cook Schuhmann & Groseclose, Inc. v. Brown & Root, Inc.*, 116 P.3d 592, 597 (Alaska 2005)).

[16]    *Taylor v. Moutrie-Pelham*, 246 P.3d 927, 928-29 (Alaska 2011) (citing *Fernandes v. Portwine*, 56 P.3d 1, 5 (Alaska 2002); *Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979)); *see also Progressive Corp.*, 195 P.3d at 1092 ("Determining who is the prevailing party is committed to the broad discretion of the trial court.").

bank.  Nor was [Taylor] entitled to occupy the house during the early months of litigation before surreptitiously abandoning it."  The court noted that "[t]here was no testimony about the fair-rental value of the house," but based on Taylor's description of the property the court found it "reasonable to ascribe a fair rental value of $1,500 per month, somewhat less than . . . Taylor's monthly mortgage payment."  Based on Taylor's having retained occupancy of the property for 11.5 months after the foreclosure sale, the court awarded Wells Fargo $17,250 from the funds held in the court registry.

Taylor argues that it was error for the superior court to award Wells Fargo the fair rental value for Taylor's post-foreclosure occupancy of the property because "there was no testimony about the fair-rental value [of the property]."  She also contends that Wells Fargo's failure to introduce any evidence regarding the fair rental value of the property indicated that Wells Fargo had abandoned its claim during trial.  Wells Fargo admits that it did not request rental damages, but contends that the superior court nonetheless was justified in awarding such damages.[17]

We agree with Taylor.  Despite the superior court's 2004 partial summary judgment order, which stated that the court would award rental damages against Taylor, rental damages should not have been assessed after Wells Fargo abandoned this claim.  Moreover, we agree with Taylor that there was insufficient evidence regarding the rental value of the property.  Thus, we reverse the superior court's decision on this issue.

---

[17]     Wells Fargo also contends that this issue is moot.  Generally, "[a] claim is moot where a decision on the issue is no longer relevant to resolving the litigation, or where it has lost its character as a 'present, live controversy,' that is, where a party bringing the action would not be entitled to any relief even if he or she prevailed." *Clark v. State, Dep't of Corr.*, 156 P.3d 384, 387 (Alaska 2007) (quoting *Municipality of Anchorage v. Baxley*, 946 P.2d 894, 899 (Alaska App. 1997)) (citing *Maynard v. State Farm Mut. Auto. Ins. Co.*, 902 P.2d 1328, 1329 n.2 (Alaska 1995)).  But this issue remains a present, live controversy on appeal, the resolution of which is relevant to the total damages amount assessed against Taylor.

**B.** **It Was Not Error To Award Wells Fargo Funds From The Sale Proceeds Of The Property Even Though Wells Fargo Failed To Produce A Deed Of Trust Note Pursuant To Alaska Statute 09.25.010 Because Taylor Voluntarily Admitted The Existence Of The Deed Of Trust Note.**

In its November 9, 2010 Findings of Fact, Conclusions of Law, and Order, the superior court concluded that Wells Fargo was entitled to the unpaid loan balance at the time of foreclosure, which was valued at $199,588. Taylor disputes this award on appeal.

In particular, Taylor contends that Wells Fargo's failure to produce a written deed of trust note violated Alaska's statute of frauds, codified at AS 09.25.010.[18]

---

[18]    AS 09.25.010 provides in pertinent part:

(a) In the following cases and under the following conditions an agreement, promise, or undertaking is unenforceable unless it or some note or memorandum of it is in writing and subscribed by the party charged or by an agent of that party:

> (1) an agreement that by its terms is not to be performed within a year from the making of it;
>
> . . . .
>
> (6) an agreement for leasing for a longer period than one year, or for the sale of real property, or of any interest in real property, or to charge or encumber real property;
>
> . . . .

(b) No estate or interest in real property, other than a lease for a term not exceeding one year, nor any trust or power concerning the property may be created, transferred, or declared, otherwise than by operation of law, or by a conveyance or other instrument in writing subscribed by the party creating, transferring, or declaring it or by that party's

(continued...)

She asserts that the superior court's "November 9, 2010 Findings of Fact, Conclusions of Law, and Order completely fail[ed] to address the fact that Wells Fargo failed to offer or have admitted a deed of trust note upon which its entire claim is based."

Wells Fargo responds that Taylor never disputed Wells Fargo's entitlement to the amount owed on the deed of trust note throughout six years of litigation, including while the matter was in bankruptcy, until she asserted her statute of frauds defense at closing arguments at trial in March 2010. Wells Fargo therefore contends that she may not raise this issue on appeal. Moreover, Wells Fargo argues that Taylor confirmed under direct examination at trial that she understood the property to be subject to the deed of trust note. Finally, Wells Fargo argues that, in any event, this issue is irrelevant, as any possible claim by Taylor was rendered moot when the property was sold during the bankruptcy proceedings.

Alaska Statute 09.25.020 provides that "[a] contract, promise, or agreement that is subject to [the statute of frauds], that does not satisfy the requirements [of the statute], but that is otherwise valid is enforceable if . . . (4) the party against whom enforcement is sought admits, voluntarily or involuntarily, in pleadings or at any other stage of this or any other action or proceeding the making of an agreement . . . ."

Taylor's February 17, 2004 complaint contained the following allegations, which recognized the making of an agreement with Wells Fargo:

> 7. In connection with the purchase of the above property, Susan Taylor executed a deed of trust and [d]eed of trust note as the Trustor, naming Land Title Company of Alaska as the Trustee and Residential Mortgage as the Beneficiary.

---

[18] (...continued)
agent under written authority and executed with the formalities that are required by law. . . .

8. Upon information and belief, the beneficial interest in the above deed of trust was transferred by assignment to Wells Fargo Home Mortgage on or about October 22, 2002.

. . . .

12. Upon learning of [Wells Fargo's] nonjudicial foreclosure, the Plaintiff listed the above property for sale through a real estate agent named Charles Stone on or about November 20, 2003. . . .

13. Charles Stone knew at the time of the listing that the seller was in default on her deed of trust note with Wells Fargo and that the property was in a nonjudicial foreclosure.

. . . .

16. Mr. Stone secured an offer on Ms. Taylor's property on December 10, 2003 for an amount in excess of the amount necessary to cure the default with Wells Fargo. . . .

Further, Taylor also confirmed at trial under direct examination that she recognized that Wells Fargo held a deed of trust note on the property:

Q   Okay. When – when Wells Fargo made you the settlement offer in January where they – what – what did you understand the terms of that offer to be?
A   The terms of the offer is if I sign this paper by – and I agree to that paper, then I'll have the house by the week's – week's end. That's what I understood.
Q   Okay. So you – did you understand that they were going to get the house back from Mr. Rhymer?
A   Yeah.
Q   And that they were going to return the house to you.
A   Return the house to me.
Q   And was it going to be subject to the original deed of trust?
A   I'm not sure on the deed of trust, but I know – all I know, they was going to return the house back to me so we can go through with the original sale . . . . .
Q   All right. And then . . .
A    . . . of the house

Q    All right. And then did you understand that Wells Fargo would be paid what they were owed on the house . . .

A    Yeah. Yeah.

Q    . . . from the proceeds of the sale?

A    Yes.

Because Taylor voluntarily admitted, both in pleadings and during direct examination, the making of an agreement with Wells Fargo, we reject Taylor's statute of frauds argument.

### C. It Was Not Error To Enter A Directed Verdict On Taylor's Fraudulent Inducement Claim.

At the close of Taylor's case at trial, Wells Fargo and Routh Crabtree moved for a directed verdict on Taylor's fraud claim. The superior court found "that no reasonable Court or jury could find that there was fraudulent intent or damage flowing from justifiable reliance on something that turned out to be a misrepresentation because there was no misrepresentation. There was an offer and acceptance. There was a settlement. The settlement holds." On this basis the superior court granted the motion for a directed verdict on the issue of fraud.

Taylor argues that it was error for the superior court to grant Wells Fargo and Routh Crabtree's motion for a directed verdict on Taylor's fraudulent inducement claim because fair-minded, reasonable jurors exercising reasonable judgment could have found that Wells Fargo and Routh Crabtree fraudulently induced Taylor to enter into the settlement agreement. In particular, she contends that "when [Wells Fargo and Routh Crabtree] made their settlement offer, they knew that unless Susan Taylor agreed to 'sit down and . . . come up with a final agreement' . . . containing additional terms, they would never perform according to the terms of the offer Ms. Taylor accepted."

In its response, Wells Fargo argues that Taylor has failed to produce any specific evidence that Wells Fargo and Routh Crabtree created a scheme to induce Taylor

to enter into the settlement agreement, and it asserts that Routh Crabtree decided to include a confidentiality clause when it drafted the proposed release. Routh Crabtree also asserts that any error made by the superior court in dismissing Taylor's fraud claim at the conclusion of her case was harmless, as there is "no reason to think that the trial court's decision would have been any different if it were delayed until the trial was concluded."

The legal test in reviewing a directed verdict "is whether the evidence, and all reasonable inferences which may be drawn from the evidence, viewed in the light most favorable to the non-moving party, permits room for diversity of opinion among reasonable jurors."[19] We have stated that "such motions should be scrutinized under a principle of minimum intrusion into the right to jury trial guaranteed under the Alaska Constitution . . . . If there is any doubt, questions of fact should be submitted to the jury."[20]

We have held that "[t]he elements of fraudulent misrepresentation are (1) misrepresentation of fact or intention, (2) made fraudulently, (3) for the purpose or with the expectation of inducing another to act in reliance; and (4) justifiable reliance by the recipient, (5) causing loss."[21] We have also noted that "[a] representation is fraudulent

---

[19] *Cameron v. Chang-Craft*, 251 P.3d 1008, 1017 (Alaska 2011) (quoting *City of Delta Junction v. Mack Trucks, Inc.*, 670 P.2d 1128, 1130 (Alaska 1983)) (internal quotation marks omitted).

[20] *Id.* at 1018 (quoting *City of Delta Junction*, 670 P.2d at 1130) (internal quotation marks omitted).

[21] *Asher v. Alkan Shelter, LLC*, 212 P.3d 772, 782 (Alaska 2009) (footnote omitted) (citing *Lightle v. State, Real Estate Comm'n*, 146 P.3d 980, 983 (Alaska 2006)), *abrogated on other grounds by Shaffer v. Bellows*, 260 P.3d 1064 (Alaska 2011); *see also* RESTATEMENT (SECOND) OF TORTS § 525 (1977).

if the maker knows it is untrue. A statement can be literally true and still be a fraudulent misrepresentation if the maker knows the statement is materially misleading."[22]

In support of her fraud claim, Taylor relied on Wells Fargo's admission during discovery that "there was never a time when the confidentiality clause was not considered a part of any agreement with [Taylor] . . . ." During trial, Erin Hirzel Roesch, a Wells Fargo employee testified that, prior to the time of the disputed settlement agreement, Wells Fargo had a policy in place that all settlement agreements would contain confidentiality provisions. Moreover, Roesch testified that this was not the first matter in which Routh Crabtree had represented Wells Fargo. Taylor relied on this evidence to assert that Wells Fargo and Routh Crabtree fraudulently induced Taylor to enter into a settlement agreement with which they knew they would not comply. But Roesch also testified that Wells Fargo would have communicated its policy regarding confidentiality to Routh Crabtree only "in a general sense as a requirement," and that Wells Fargo would not have reviewed Routh Crabtree's January 28, 2004 letter to Taylor before it was sent. This testimony was not controverted by Taylor.

We conclude that the superior court did not err in granting the directed verdict on Taylor's fraud claim. Although Wells Fargo had a policy regarding confidentiality provisions in place at the time of the disputed settlement agreement, Taylor has failed to produce specific evidence regarding the particular events in question, and she did not controvert Roesch's testimony that Wells Fargo would not have reviewed the settlement offer before it was sent. Based on the evidence presented, reasonable jurors could not disagree that Wells Fargo and Routh Crabtree did not make a fraudulent misrepresentation of fact or intention to Taylor. We therefore affirm the superior court's grant of a directed verdict.

---

[22]     *Id.* at 782 (citing *Lightle*, 146 P.3d at 986).

**D.** **Taylor Waived Any Argument Regarding The Superior Court's Award Of Prejudgment Interest To Wells Fargo.**

In its February 2011 Amended Final Judgment, the superior court awarded $199,588 to Wells Fargo on the deed of trust note and included prejudgment interest dating from January 15, 2004. Taylor did not object to this award. But after Wells Fargo sought attorney's fees under Alaska Civil Rules 68 and 82, based partially on the prejudgment interest award, the superior court sua sponte reconsidered for the purposes of awarding attorney's fees whether it erred in awarding prejudgment interest on the unpaid loan balance. First, the superior court concluded that "the court erred when it charged . . . Taylor prejudgment interest both on the unpaid $17,[250] in rent and the unpaid loan for 2004." Second, the court concluded that it "improvidently awarded Wells Fargo seven years of prejudgment interest on its loan." Despite these conclusions, the court held that it had no power to revise its judgment because the filing of this appeal deprived the court of jurisdiction in the matter.

Taylor argues that it was error for the superior court to award "Wells Fargo both prejudgment interest and rent," asserting that such error "amounted to a double recovery for Wells Fargo." Taylor requests that we recognize and correct the superior court's errors. Wells Fargo responds that it was entitled to prejudgment interest on the amount owed under the deed of trust note from January 15, 2004, through the date of final judgment, because of its inability to use the funds throughout that time period.

Generally, "a party may not raise an issue for the first time on appeal."[23] Alaska Civil Rule 78(a) provides that "counsel for the successful party to an action or proceeding shall prepare in writing and file and serve on each of the other parties

---

[23]    *Mullins v. Oates*, 179 P.3d 930, 941 n.31 (Alaska 2008) (quoting *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001)) (internal quotation marks omitted).

proposed findings of fact, conclusions of law, judgments and orders." Civil Rule 78(b) provides that "[w]ithin 5 days after service of any of the documents mentioned in paragraph (a), a party may file and serve a written detailed statement of objections to any such document and the reasons therefor."

Although Taylor could have objected to the superior court's entry of prejudgment interest, she failed to dispute the award of interest until the superior court sua sponte raised the issue in its order regarding attorney's fees. Moreover, Taylor's motion for reconsideration of the superior court's Amended Final Judgment recognized the court's award of prejudgment interest and alleged that the only error that the superior court committed in regards to interest was that it applied the wrong interest rate. There is no indication in the record that Taylor opposed the award of prejudgment interest until the superior court sua sponte raised the issue in May 2011. Because Taylor failed to object to Wells Fargo's proposed entry of prejudgment interest, we conclude she waived her right to object to the calculation of prejudgment interest on appeal.[24] But we also note that, due to our reversal of the superior court's award of rental damages, any award

---

[24]    *Cf. Rowley v. Amrhein*, 883 N.Y.S.2d 214, 215 (N.Y. App. Div. 2009) ("Defendant's challenge to the judgment . . . is not preserved for appellate review since there is no record that defendant raised any objection to plaintiff's proposed judgment . . . ."). We further note that, even had Taylor properly objected to the award of prejudgment interest before the superior court, Taylor's brief on appeal insufficiently argues this issue. We have held that "where a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal." *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991) (citing *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980); *Fairview Dev., Inc. v. City of Fairbanks*, 475 P.2d 35, 36 (Alaska 1970), *cert. denied*, 402 U.S. 901 (1971)). Taylor's brief merely references the fact that the superior court sua sponte questioned its entry of prejudgment interest and then suggests that we correct this issue in the course of the present appeal. Her suggestion is not accompanied by argument or citation to any legal authority, and accordingly would be considered to have been waived.

of prejudgment interest to Wells Fargo in relation to the award of rental damages must be vacated.

**E.** **The Superior Court Did Not Properly Determine Whether Wells Fargo Was The Prevailing Party Under Alaska Civil Rule 68.**

In its May 18, 2011 order, the superior court concluded that Wells Fargo was the prevailing party for two independent reasons: (1) "Taylor's home equity recovery, offset by Wells Fargo's back-rental recovery, was substantially less than Wells Fargo['s] offer of judgment"; and (2) Wells Fargo prevailed on the fraud issue, which was the main issue in the case.

Taylor argues that the superior court abused its discretion when it determined that Wells Fargo was the prevailing party for purposes of Civil Rule 82 attorney's fees. Taylor contends that "[t]he main issue in the . . . case was whether Wells Fargo, though its agent Routh Crabtree, breached the settlement agreement with . . . Taylor in early 2004 by refusing to perform according thereto." Wells Fargo responds that it is the prevailing party as to Taylor and that Taylor's argument regarding prevailing party status "has been consistently rejected based upon the facts of the case."

As an initial matter, we note that the superior court did not properly determine whether Wells Fargo was the prevailing party under Civil Rule 68. Wells Fargo's December 12, 2008 Rule 68 Offer of Judgment was made "in full and final resolution of all claims and counterclaims brought, or which could have been brought, by each and every party . . . inclusive of all principal, interest, applicable penalties, costs, attorney's fees, and/or relief to which any party may be entitled." Regarding Rule 68 offers of judgment made "inclusive of all principal, interest, applicable penalties, costs,

attorney's fees, and/or relief to which any party may be entitled," our ruling in *Farnsworth v. Steiner*[25] is instructive:

> Since the ultimate . . . award reflects compensation for an injury as of the day of its occurrence, interest to the date the offer is made must be added to the jury award before a valid comparison of the two figures can be made. If . . . the offer of judgment specifically includes costs rather than simply an offer to pay reasonable costs in addition to the fixed amount contained in the offer of judgment then costs accrued up to the date of the offer must also be added to the amount awarded . . . if the two figures are to be compared meaningfully. . . . [C]alculation of this figure is straightforward:
>
> > The proper mathematical formula for the computation of a judgment under Rule 68 would appear as follows:
> > $J = (V + PI) + (AF + C)$,
> > for which
> > J = Judgment for computation under Rule 68 to determine whether the Offer of Judgment had been exceeded;
> > V = Jury verdict;
> > PI = Prejudgment interest accrued prior to the Offer of Judgment;
> > AF = Attorney's fees incurred by the offeree prior to the Offer of Judgment.
> > C = Costs incurred by the offeree prior to the Offer of Judgment.[26]

We therefore remand to the superior court for proper calculation under our holding in *Farnsworth*.

---

[25]     601 P.2d 266 (Alaska 1979).

[26]     *Id.* at 269 n.4.

**F.     The Superior Court Did Not Abuse Its Discretion In Determining That Routh Crabtree Was The Prevailing Party For Purposes Of Awarding Attorney's Fees.**

In its May 18, 2011 order, the superior court concluded that Routh Crabtree was the prevailing party as to Taylor.  The court also found that Taylor's fraud claim as against Routh Crabtree was "unreasonable" and therefore awarded enhanced attorney's fees under Alaska Civil Rule 82(b)(3).  The court then awarded Routh Crabtree 60% of its attorney's fees.

Taylor argues that she should be considered the prevailing party as to Routh Crabtree.  Taylor's argument is based on her assertion that Routh Crabtree, as Wells Fargo's agent, acted negligently and therefore should be liable for its conduct on behalf of Wells Fargo, its principal.  Taylor concludes that "since Wells Fargo is liable to Susan Taylor [with respect to the breached settlement agreement], its agent Routh Crabtree is as well."  Based on her argument that the breach of contract claim was the main issue in the case, Taylor concludes that she should also be awarded attorney's fees against Routh Crabtree.

Routh Crabtree responds that, contrary to Taylor's assertion, it was not found to be a party to the breached settlement agreement.  Citing the Restatement (Second) of Agency § 328[27] and *Jensen v. Alaska Valvation Service, Inc.*,[28] Routh Crabtree contends that "[t]he agent of a competent, disclosed principal does not become a party to a transaction made [on] behalf of his principal."  Thus, Routh Crabtree concludes it was not liable for Wells Fargo's breach of the settlement agreement and

---

[27]     Section 328 provides that "[a]n agent, by making a contract only on behalf of a competent disclosed or partially disclosed principal whom he has power so to bind, does not thereby become liable for its nonperformance."  RESTATEMENT (SECOND) OF AGENCY § 328 (1958).

[28]     688 P.2d 161 (Alaska 1984).

therefore Taylor could not be a prevailing party as against Routh Crabtree on this issue. Moreover, Routh Crabtree also contends that it is entitled to attorney's fees under Alaska Civil Rule 68(c), as it participated in a joint offer of judgment that Taylor rejected, and Taylor subsequently recovered nothing against Routh Crabtree. Based on these arguments, Routh Crabtree argues that the superior court was correct in awarding it attorney's fees against Taylor.

Routh Crabtree is correct. While the superior court concluded that Wells Fargo had breached the settlement contract, there is no indication in the record that the superior court found Routh Crabtree also liable for Wells Fargo's non-performance, and the superior court's final judgment awarded no damages against Routh Crabtree. Moreover, Routh Crabtree is correct that, absent an agreement between it and Taylor, or a finding that it acted negligently toward Taylor, Routh Crabtree was not liable for Wells Fargo's non-performance.[29] We can find no indication in the record that Routh Crabtree either agreed to be liable on the contract or committed a tort against Taylor. Accordingly, Routh Crabtree was not liable for Wells Fargo's subsequent non-performance. Routh Crabtree was the prevailing party and entitled to attorney's fees as against Taylor.

---

[29] Generally, a disclosed agent is not a party to a contract unless the agent and third party otherwise agree. The rule cited by Routh Crabtree from the Restatement (Second) of Agency, *see supra* n.27, is reflected in the Restatement (Third) of Agency, which provides that "[w]hen an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, (1) the principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and third party agree otherwise." RESTATEMENT (THIRD) OF AGENCY § 6.01 (2006). Accordingly, an agent generally is not liable for the principal's subsequent non-performance on the contract. Alternatively, the Restatement (Third) of Agency also provides that "[a]n agent is subject to liability to a third party harmed by the agent's tortious conduct." RESTATEMENT (THIRD) OF AGENCY § 7.01 (2006).

**G.    Any Right To Recover Fees For Work Performed On Behalf Of The Dismissed Defendants Has Been Waived.**

"Stephen Routh, PC and Richard Crabtree, a Partnership" and "Richard Crabtree, individually" were dismissed by way of a Rule 54(b) judgment in January 2010. Taylor argues that any right to seek attorney's fees for work performed on their behalf has been waived. We agree.

Any attorney's fees for work on behalf of the dismissed defendants should have been requested within ten days of distribution of the final judgment that dismissed those defendants.[30] No timely request was made. Thus, any right to collect those fees has been waived. Upon remand, the superior court shall not award attorney's fees for work on behalf of the dismissed defendants.

**H.    It Was Error To Award Routh Crabtree Attorney's Fees For Work Performed in Taylor's Bankruptcy Case.**

The superior court's February 2011 Amended Final Judgment specified that Routh Crabtree "shall recover from and have judgment from the funds in the court registry and against Susan Taylor." When the court later entered its May 18, 2011 order on attorney's fees, it did not modify this language. Thus, Routh Crabtree's attorney's fees were enforceable against Taylor personally.

Taylor contends that, on account of her discharge in bankruptcy, it was error for the superior court to award Routh Crabtree attorney's fees against her personally. Routh Crabtree responds that, because it sought attorney's fees only for the period of time after Taylor filed her bankruptcy petition, any award of fees should be enforceable against Taylor personally.

---

[30]    Alaska Civ. R. 82(c) (stating that motions for attorney's fees must be filed within ten days of distribution of final judgment).

We have held that attorney's fees incurred in bankruptcy proceedings must be sought in the bankruptcy court.[31]  Thus, it was error for the superior court to award fees incurred by Routh Crabtree in responding to Taylor's bankruptcy petition.  Upon remand, the superior court shall not award attorney's fees for work in Taylor's bankruptcy case.

## I.    It Was Error To Award Routh Crabtree Attorney's Fees Based On The Time It Spent Seeking Penalties Against Taylor's Attorney.

On February 17, 2011, Routh Crabtree moved for Rule 11 sanctions against Yale Metzger, Taylor's attorney, which the superior court ultimately denied.  Routh Crabtree's motion for attorney's fees, also filed on February 17, contained an itemized list of time spent by Routh Crabtree in defense of the claims brought by Taylor.  This itemized list also included time spent seeking sanctions against Metzger, and there is no indication in the record that the superior court excluded this time in its ultimate calculation of attorney's fees.  Because Routh Crabtree should not receive attorney's fees based on the time it spent seeking sanctions against Metzger, we direct the superior court on remand to remove those attorney's fees awarded based on the time Routh Crabtree spent seeking penalties against Metzger.

---

[31]    *Rockstad v. Erikson*, 113 P.3d 1215, 1225 (Alaska 2005) ("[I]t was the sole province of the bankruptcy court, and not the superior court or this court, to award attorney's fees to Erikson for his efforts in responding to Rockstad's bankruptcy petition.").

## V.    CONCLUSION

Because Wells Fargo abandoned its claim for rental damages at trial, we REVERSE the superior court's award to Wells Fargo of rental damages for Taylor's post-foreclosure occupancy of the property. Accordingly, any award of prejudgment interest to Wells Fargo in relation to the superior court's award of rental damages is vacated. Because the superior court did not apply *Farnsworth* to calculate whether Wells Fargo was a prevailing party under Rule 68, we REMAND for further calculation. As part of the remand, the superior court is directed to remove attorney's fees awarded to Routh Crabtree for work performed on behalf of the dismissed defendants, attorney's fees awarded to Routh Crabtree for work performed in Taylor's bankruptcy case, and attorney's fees awarded to Routh Crabtree that were based on the time Routh Crabtree spent seeking penalties against Yale Metzger. We AFFIRM the superior court's decision in all other respects.